**Robert MUENCH, Petitioner,**

v.

**Thomas ISRAEL, et al., Respondents.**

**No. 80–C–619.**

United States District Court,
E. D. Wisconsin.

Oct. 21, 1981.

---

Robert Muench, pro se.

Michael R. Klos, Asst. Atty. Gen., Charles B. Vetzner, Asst. State Public Defender, Madison, Wis., for respondents.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On July 10, 1980, petitioner Robert Muench filed a petition for writ of *habeas corpus* with this Court. The Court denied the petition and entered judgment on May 21, 1981. 514 F.Supp. 1194. Presently before the Court is petitioner's motion for relief from judgment, pursuant to Rules 60(b)(4) and 60(b)(6) of the Federal Rules of Civil Procedure. Petitioner argues that under 28 U.S.C. § 455(b)(3), this Court should have disqualified itself from consideration of the petition for writ of *habeas corpus*.

### I. *Background*

The central issue raised in petitioner's motion concerns the role of this Court when it sat as Attorney General of Wisconsin during a prior proceeding involving both the petitioner and the State of Wisconsin. At the time this Court served in that capacity, petitioner appealed a criminal conviction to the Wisconsin Supreme Court. The state, as respondent in that appeal, was formally represented by this Court as Attorney General, in accordance with one of several statutory duties ascribed to that office. The Wisconsin Supreme Court affirmed petitioner's conviction. *Muench v. State*, 60 Wis.2d 386, 210 N.W.2d 716 (1973). Petitioner then filed the petition for writ of *habeas corpus* in which he raised issues similar to those of his state appeal. In his motion now before this Court, petitioner argues that because this Court formally represented the State of Wisconsin in the state appeal, the Court should have disqualified itself from sitting as judge and rendering a decision on his petition for writ of *habeas corpus*.

### II. *Recusal Under 28 U.S.C. § 455(b)(3)*

It should be noted at the outset that petitioner did not raise the issue of recusal at any time prior to or during this Court's consideration of his petition for writ of *habeas corpus*. The respondent has asserted that petitioner's motion is untimely. Indeed, some courts in other jurisdictions have denied motions for recusal on the ground that the issue was not timely raised. *See, e. g., In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir. 1980). Nevertheless, the Seventh Circuit has indicated by way of dictum that the issue of recusal under section 455(b) should not be circumvented by a claim of untimeliness. *See SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977). Therefore, the Court will address the merits of petitioner's motion.

Section 455(b) of Title 28, United States Code, enumerates five circumstances under which a judge must disqualify himself from sitting in a particular case. Under section 455(b)(3), recusal is mandatory where the judge "has served in governmental employment and in such capacity participated as counsel, advisor or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." This subsection was one of a series of changes included as part of a 1974 amendment to 28 U.S.C.

§ 455.[1] The primary purpose of the amendment was to reconcile the statute with the 1972 A.B.A. Code of Judicial Conduct. The legislative history, however, indicates that subsection (b)(3) goes beyond the A.B.A. Canon on disqualification and is designed to address the unique situations confronted by government attorneys who are subsequently appointed to the judiciary.[2] The intent of the language in subsection (b)(3) was described by the House Judiciary Committee as follows:

It is intended to cover the situations which can occur during the first two or three years of judicial service of a lawyer who is appointed to the bench from service as a government lawyer ... Subsection (b)(3) carries forward from Subsection (b)(2) a required disqualification where the judge, as a government lawyer, had acted as counsel, adviser or material witness concerning the proceeding. In addition, the judge must disqualify himself where, as a government lawyer, he had expressed an opinion concerning the merits of the particular case in controversy ... H.R.Rep. No. 1453, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad.News, 6351, 6355-6356.

The House Report also makes clear that this interpretation of subsection (b)(3) was derived largely from the testimony given at the Senate Judiciary Committee hearings by the chairman and the reporter for the A.B.A. Committee which adopted the Code of Judicial Conduct.[3]

During the Senate hearings on the proposed amendment to section 455, Professor E. Wayne Thode, the reporter for the A.B.A. Committee, testified concerning the meaning of Canon 3 of the A.B.A. Code of Judicial Conduct, which served as a model for the 1974 amendment. Canon 3 provides, in part:

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: ...

(b) he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it ....

Realizing that service in a governmental agency presented special problems for an attorney later appointed to the judiciary, the A.B.A. Committee included a commentary to Canon 3, which states:

*COMMENTARY*

A lawyer in a governmental agency does not necessarily have an association with other lawyers employed by that agency within the meaning of this subsection; a judge formerly employed by a governmental agency, however, should disqualify himself in a proceeding if his impartiality might reasonably be questioned because of such association.

Professor Thode explained the purpose behind the Commentary to Canon 3C(1)(b) as follows:

The commentary clarifies the status of the judge who was formerly a lawyer in a governmental agency. An agency, for example, the Justice Department, is not fully equated with a private law firm, in that a former agency lawyer is not considered to have been associated with all other lawyers in the agency. I might say we started out by equating the two and, as we went along the committee decided that that really was taking too hard a line because to say that all lawyers in the Justice Department or the FCC or any other agency are to be considered in the

---

**1.** Prior to the 1974 amendment, 28 U.S.C. § 455 read:

Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in

his opinion, for him to sit on the trial, appeal, or other proceeding therein.

**2.** See H.R.Rep. No. 1453, 93d Cong.2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News, 6355.

**3.** *Id.*, at 6356.

same way that you would consider the lawyers in a private law firm, that was too sweeping a disqualification and there was no good reason for it. . . . [4]

Professor Thode noted that the Code's requirement of disqualification was applicable only if the judge who had previously been in a governmental agency had "served as lawyer" in the same or a similar proceeding. This testimony provided the impetus for the inclusion of subsection (b)(3) in the 1974 amendment, and is indicative of Congress' intent that the language encompass situations in which a judge's prior contact with a case has been more than simply administrative.

There is little case law addressing the applicability of section 455(b)(3) to the specific issue in the instant case. However, commentators on the federal judicial system have repeatedly recognized the absurdity of mandating recusal simply because a judge has had a strictly formal relationship with a case while serving in a governmental position such as Attorney General. Thus, in his law review article which was later cited with approval by Mr. Justice Rehnquist in *Laird v. Tatum*, 409 U.S. 824, 829, 93 S.Ct. 7, 10, 34 L.Ed.2d 50 (1972), John P. Frank observed that "there is no impropriety where the judge's role as prosecutor has been largely formal, as in the case of Attorneys General, who have only theoretical responsibility for minor cases in their departments." [5] *See also*, Frank, *Disqualification of Judges; In Support of the Bayh Bill*, 35 Law & Contemp. Prob. 43 (1970).

In addition, history is replete with examples of United States Supreme Court justices who had previously served in the Justice Department and later declined recusal in cases which had been handled by the Department during their tenure as government attorneys but with which their connections were purely formal.[6] Thus, prior to the 1974 amendment to section 455, the standard for recusal followed by most Supreme Court justices who had previously served as United States Attorney General was whether their prior involvement in a case involved something more than a mere pro forma relationship. There is nothing in the legislative history of section 455(b)(3) to suggest that this view is no longer appropriate.

■ In determining whether this Court "participated as counsel" in petitioner's state appeal, which would have rendered recusal mandatory under section 455(b)(3), it is necessary to examine the structure of the Wisconsin Attorney General's Office and the procedures for case management and disposition as they existed at the time this Court served as Attorney General.

As Attorney General for the State of Wisconsin, this Court was obligated to formally represent the State in all matters before the Wisconsin Supreme Court. The substance of its participation, however, was principally formal, confined to having its name as Attorney General printed on the State's brief to the Wisconsin Supreme Court. This was especially true in the area of criminal appeals. The direct responsibility for the preparation and conduct of these appeals rested with the Criminal Appeals Unit at the Wisconsin Department of Justice. All criminal appeals were assigned by the head of that unit to the staff attorneys within the unit. The unit attorneys conducted all of the research for the appeals, and they prepared the briefs which would

4. Hearing on S.1064 Before The Subcommittee On Improvements In Judicial Machinery Of The Committee On The Judiciary, United States Senate, 93d Cong., 1st Sess., 100 (1971–1973).

5. Frank, *Disqualification of Judges*, 56 Yale L.J. 605, 624 (1947).

6. In *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943), Mr. Justice Murphy declined to recuse himself even though the case had been handled by the United States Justice Department when he was Attorney General. Similarly, Mr. Justice Rehnquist refused to disqualify himself from sitting in *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), since he had never participated in the Government's handling of that case while he was with the United States Justice Department. *See also*, testimony of Mr. Chief Justice Stone, Hearings before House Judiciary Committee on H.R. 2808, 78th Cong., 1st Sess., 124 (1943).

ultimately be submitted to the Wisconsin Supreme Court. The only involvement by the Attorney General in this highly departmentalized process was by way of a monthly unit meeting designed to deal with administrative matters. Unless the Attorney General requested specific information concerning a particular case, he had no knowledge of appeals handled by the attorneys in the Criminal Appeals Unit. The Attorney General had no personal knowledge of most cases because there were thousands of cases prosecuted and defended by the Attorney General's Office, and the Criminal Appeals Unit was but one of several departments over which the Attorney General exercised administrative control.

There are no facts in the instant case to suggest petitioner's appeal to the Wisconsin Supreme Court was handled differently than the usual procedure followed by the Criminal Appeals Unit, or that this Court stepped outside its predominant role and assumed an active posture in petitioner's case. Indeed, this Court did not have personal knowledge of that appeal, nor did it express any opinion on the merits of petitioner's case. To say that this Court "participated as counsel" in petitioner's appeal would be to ignore the realities of case management within the complex bureaucracy of the Wisconsin Attorney General's Office. Furthermore, the Court believes that its consideration of petitioner's case presents no "appearance of impropriety." [7] The legislative history of section 455(b)(3) provides strong evidence of a congressional awareness that, under such circumstances, appearances do not foretell reality, and that substance, not form, must be the guiding rule.

The substance of this Court's relationship to petitioner's state appeal was merely pro forma, and as such, does not fall within the criteria for recusal under section 455(b)(3). Therefore, this Court was not required to disqualify itself from deciding petitioner's application for writ of *habeas corpus*. For the foregoing reasons, the Court hereby DENIES petitioner's motion for relief from judgment.

---

7. *See,* Hearing on S.1064 Before The Subcommittee On Improvements In Judicial Machinery Of The Committee On The Judiciary, United States Senate, 93d Cong., 1st Sess., 11 (1971–1973).