663 A.2d 142

**COMMONWEALTH of Pennsylvania, Respondent,**

v.

**James JONES, Petitioner.**

Supreme Court of Pennsylvania.

June 8, 1995.

## *OPINION IN SUPPORT OF DENIAL OF APPELLANT'S MOTION FOR RECUSAL*

CASTILLE, Justice.

On May 26, 1995, James Jones ("Petitioner") filed a Motion for Recusal requesting that I recuse myself from participating

in the consideration or decision of petitioner's petitions requesting that this Court exercise its King Bench Powers and grant a stay of his execution, which is scheduled for 10 p.m. on June 13, 1995,[1] pending resolution by the United States Supreme Court on his petition for writ of certiorari.[2] The basis for petitioner's request for recusal is that as District Attorney of Philadelphia County, Pennsylvania, my name appeared on a brief filed with this Court on May 14, 1990 urging affirmance of petitioner's conviction and death sentence.[3]

■ Under the existing practice of this Court, recusal has been a matter of individual discretion or conscience and only the jurist being asked to recuse himself or herself may properly respond to such a request. *Commonwealth v. O'Shea*, 523 Pa. 384, 407, 567 A.2d 1023, 1034 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *In re Crawford's Estate*, 307 Pa. 102, 108–09, 160 A. 585, 587 (1932). For the reasons set forth below, I have determined that my recusal in this matter is not warranted.

At the outset, it is important to note that during my tenure as District Attorney from January of 1986 through February of 1991, the Philadelphia District Attorney's office (consisting

1. Petitioner was sentenced to death by a jury in 1981 after being found guilty of two counts of first degree murder for the 1980 deaths of two young women found bound and gagged and burned to death in the basement of a house in Philadelphia. This Court confirmed petitioner's conviction and death sentence on December 28, 1994. *Commonwealth v. Jones*, 539 Pa. 222, 651 A.2d 1101 (1994).

2. I would note that petitioner's request for a stay of his execution has been granted this 8th day of June, 1995.

3. Following petitioner's conviction and sentence in 1981, he finally filed a notice of appeal with this Court in June, 1985. Thereafter, two counsel appointed to represent petitioner were allowed to withdraw their appearance. Finally, another counsel was appointed and the case was submitted on briefs to this Court in 1990. However, on March 16, 1992, this Court, in response to the briefs filed by petitioner and the Commonwealth at that juncture, remanded the case for appointment of new counsel because it deemed "the efforts of appellant's counsel to be less than adequate for the purpose of reviewing this death penalty appeal. *Commonwealth v. Jones*, 529 Pa. 428, 604 A.2d 1020 (1992). New counsel was appointed and a new brief was filed in this Court in October, 1993. I was no longer District Attorney when this 1993 brief was filed or when petitioner's conviction was affirmed.

of approximately 225 attorneys and a total of 475 staff employees) *each year* disposed of over 65,000 criminal matters and several thousand appeals in both the Superior and Supreme Courts of Pennsylvania, as well as in the federal courts. Given this enormous volume of criminal cases processed in Philadelphia County, it was impossible for the duly-elected District Attorney to be personally familiar with the details of each and every criminal case prosecuted by his assistants and deputy district attorneys during his or her tenure.

I would also note that because of my duly-elected position as District Attorney, as a matter of formality, a stamp of my signature was required to be affixed to all indictments and complaints issued during my tenure. My name was also required to be listed on numerous appellate and amicus curiae briefs filed on behalf of the District Attorney's office. Petitioner should not construe this formal administrative step or requirement to suggest that I was, *per se,* personally and directly involved with the prosecution or appeal of his criminal case.

With respect to petitioner's matter presently before this Court, I was not District Attorney at the time petitioner was tried in 1981. As for petitioner's appeal to this Court in 1990, I am not aware of any materials indicating that I personally reviewed petitioner's criminal file or otherwise personally participated in the prosecution of petitioner's matter as an advisor, or as a trial or appellate attorney. Indeed, to the best of my knowledge and recollection, I have no factual information about petitioner's underlying criminal case other than the knowledge and information contained in the petitions and briefs that I have reviewed through my duties as a Justice of this Court. I have not prejudged petitioner's matter nor would I prejudge it simply because I served as a District Attorney and had a general responsibility for all matters that fell within my official capacity, this being one of the many. Given the absence of personal involvement with petitioner's matter while I served as District Attorney, and upon review of the relevant case law, I see no reason to recuse myself in this matter.

In *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), then Justice William Rehnquist, and now Chief Justice, was asked to disqualify himself in a matter that appeared before the United States Supreme Court because as an Assistant Attorney General in the Department of Justice he had publicly commented on the subject matter then pending before the Court in *Laird v. Tatum* (the statutory and constitutional law regarding the authority of the executive branch to gather information), and also because he had previously testified as an expert witness on behalf of the Justice Department in Senate hearings inquiring into the very same subject. The respondents in *Laird* claimed that Justice Rehnquist's impartiality was "clearly questionable" because of his expert testimony in the Senate hearings, because of his intimate knowledge of the subject matter underlying the allegations before the Court, and because of his public statements about issues related to the pending matter prior to his appointment to the Court. 409 U.S. at 825, 93 S.Ct. at 9.

Rejecting respondents' arguments, Justice Rehnquist held that even though he held a high-level supervisory position in the Department of Justice while *Laird* was being investigated and prosecuted within the Department of Justice, his disqualification was not warranted since he did not have an advisory role in any matters involving *Laird v. Tatum*, had never signed a pleading or brief regarding the case, and had never personally participated in the courts on behalf of the Government with respect to the *Laird v. Tatum* case. In support of his position, Justice Rehnquist cited as precedent *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, *reh'g denied*, 320 U.S. 807, 64 S.Ct. 24, 88 L.Ed. 488 (1943), a matter in which United States Supreme Court Justice Murphy did not disqualify himself even though the matter then before the Court had been prosecuted by the Department of Justice while Justice Murphy was the Attorney General of the United States.

Similarly, in *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983), this Court held that recusal was not required of a trial judge even though the trial judge formerly, as District

Attorney, had personally prosecuted the appellant on charges unrelated to the matter presently before him, had taken a statement of a primary witness in the case before him about the appellant while he was District Attorney, and had been the District Attorney when the offenses in question were committed by the appellant. Appellant argued that the judge should have recused himself because of his prosecutorial role and prior contact with the Appellant. This Court, however, rejected appellant's argument:

> [W]e have never held and are unwilling to adopt a *per se* rule that a judge who had participated in the prosecution of a defendant may never preside as judge in future unrelated cases involving that defendant. Absent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defendant a fair trial based solely on prior prosecutorial participation.

*Commonwealth v. Darush*, 459 A.2d at 731.[4]  *Accord Commonwealth v. Edmiston*, 535 Pa. 210, 229–30, 634 A.2d 1078, 1088 (1993); *In re Crawford's Estate*, 307 Pa. at 109, 160 A. at 587.

■  Here, I had no personal connection with petitioner's matter. Thus, as in *Darush*, since there is no indication that I had any personal connection with petitioner's matter while I was the District Attorney of Philadelphia County, recusal is not warranted. Moreover, recusal is further unwarranted where, as here, there has been no allegation or showing of any specific prejudgment or bias against petitioner. *Commonwealth v. Darush*, 459 A.2d at 731. As this Court stated in *Reilly v. Southeastern Pennsylvania Transp. Authority*, 507 Pa. 204, 489 A.2d 1291 (1985):

> It is incumbent upon the proponent of a disqualification motion to allege *facts* tending to show bias, interest or other disqualifying events, and it is the duty of the judge to decide

---

**4.** It should be noted that even though the matter was remanded for a new trial in *Darush*, it was solely on the grounds that the appellant averred that while running for election for judge, the judge allegedly made statements about the appellant which could conceivably evidence personal bias against the appellant and for which the judge had no recollection of such statements.

whether he feels he can hear and dispose of the case fairly and without prejudice because we recognize that our judges are honorable, fair and competent.

*Reilly,* 507 Pa. at 221–22, 489 A.2d at 1300 (emphasis added). Petitioner's sole assertion of fact in support of his motion for recusal is that as District Attorney, my name appeared on a brief filed with this Court. This assertion, without more, fails to meet this threshold requirement.

■ Petitioner also claims that my review of his petition seeking a stay of his execution as a member of this Court violates or offends the notions of due process. This Court has already spoken as to when matters relating to judicial disqualification may rise to a federal constitutional claim. Adopting the reasoning of the United States Supreme Court in *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 820–21, 106 S.Ct. 1580, 1584–85, 89 L.Ed.2d 823 (1986), this Court in *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989), stated that the Fourteenth Amendment Due Process provision is offended where the jurist has a *"direct, personal, substantial, pecuniary interest."* 565 A.2d at 761 (emphasis added). However, in this case, given the lack of any direct personal involvement with petitioner's underlying matter, in addition to the nonexistence of any prejudgment or bias on my behalf with respect to petitioner, there is clearly no basis for petitioner to claim now, or in the future, that as a Justice on this Court I have a "direct, personal, substantial, pecuniary interest" in the outcome of his case that would possibly substantiate a due process claim.

Just as significant is the fact that there are a total of six Justices who now sit upon this Court, the highest appellate court in this Commonwealth. In addressing the special concerns that arise when a Justice has been asked to recuse or disqualify himself from the highest court, Justice Rehnquist remarked in his Memorandum:

[T]here is no way of substituting Justices on [the highest] Court as one judge may be substituted for another in the district courts. There is no higher court of appeal that may

review an equally divided decision of this Court and thereby establish the law for our jurisdiction.

*Laird v. Tatum,* 409 U.S. at 837, 93 S.Ct. at 15. These concerns are equally applicable to the Supreme Court of Pennsylvania. Indeed, in *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989), Chief Justice Nix specifically addressed these same concerns as they applied to a request that a Pennsylvania Supreme Court Justice recuse himself:

> Unlike a trial court where one judge presides, courts *en banc,* panels or *en banc* intermediate appellate courts, the Supreme Court is constituted so as to provide its full complement of seven members to consider all of the matters that come before it. Its responsibility to interpret and develop the law of the Commonwealth mandates that its full membership be available and participate in all matters that come before the Court. A state as diverse in cultures, interests and ethnic stock as this Commonwealth increases the importance of assuring that the questions before this Court receive the reflective judgment enriched by the varied perspectives of its members that participate in reaching that judgment. The expression of concurring and dissenting views assures a more complete exposition of the reasons underpinning the judgment and aids in evaluating the wisdom of the majority position. Quite frequently the dissenting view today becomes the majority view of the future. *Thus, this Court was structured so that, except for good cause, the full complement of the Court should participate in the judgments of this Court. Failure to recuse, standing alone, is not a basis for collateral attack upon a jurist.*

*Goodheart,* 523 Pa. at 201, 565 A.2d at 763–64 *(emphasis added ).*

█ Because this Court sits as a full court, as does the Supreme Court of the United States, were I to recuse myself, this Court would lack its present full complement of six justices.[5] Therefore, if I were to recuse myself on all matters

---

5. As of the date of this opinion, this Court has only six Justices as a result of the retirement of the Honorable Nicholas P. Papadakos on January 22, 1995.

pending or initiated while I was District Attorney, potentially over 300,000 criminal cases would be subject to this Court's review without the benefit of a full Court.

■ Finally, petitioner cites to Canon 3 of the Code of Judicial Conduct to support his Motion for Recusal. Canon 3 provides, in pertinent part:

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: ...

      \*      \*      \*      \*      \*      \*

(b) he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter. . . .

Petitioner fails to mention the Commentary to Canon 3 which the American Bar Association included out of recognition that an attorney's association with a governmental agency warrants special considerations. *See Muench v. Israel*, 524 F.Supp. 1115, 1117 (E.D.Wis.1981). Specifically, the Commentary provides: "A lawyer in a governmental agency does not necessarily have an association with other lawyers employed by that agency within the meaning of this subsection ...". Professor E. Wayne Thode, the reporter for the A.B.A. Committee who testified before the Senate Judiciary Committee during the 93d Congress in connection with the Code of Judicial Conduct, explained the purpose behind the Commentary to Canon 3(C)(1)(b) as follows:

The commentary clarifies the status of the judge who was formerly a lawyer in a governmental agency. An agency, for example, the Justice Department, is not fully equated with a private law firm, in that a former agency lawyer is *not* considered to have been associated with all other lawyers in the agency.

*Muench v. Israel*, 524 F.Supp. at 1117 (emphasis added).

In applying the Commentary to Cannon 3, the Honorable Robert W. Warren in *Muench v. Israel* declined to recuse

himself even though he had served as the Attorney General of Wisconsin during the time the appellant appealed his criminal conviction to the Wisconsin Supreme Court. The state, as the respondent, was formally represented by then Attorney General Warren. Nevertheless, Judge Warren did not recuse himself from hearing the petitioner's federal petition for a Writ of Habeas Corpus since he had not personally participated in the previous state appellate process other than in his official, formal capacity. Taking guidance from the United States Supreme Court, the court noted that:

> [H]istory is replete with examples of United States Supreme Court Justices who had previously served in the Justice Department and later declined recusal in cases which had been handled by the Department during their tenure as government attorneys but with which their connections were purely formal. Thus ... the standard for recusal followed by most Supreme Court justices who had previously served as United States Attorney General was whether their prior involvement in a case involved something more than a mere pro forma relationship.

*Muench v. Israel*, 524 F.Supp. at 1118 (footnote omitted). *See also In re Searches Conducted on March 5, 1980*, 497 F.Supp. 1283, 1290 (E.D.Wis.1980) (recusal not required even though judge formerly served as the Attorney General of Wisconsin during the investigation and prosecution of petitioners and had been sued by one of the petitioners in an unrelated matter).

As District Attorney of Philadelphia, I took an oath to uphold the Constitution of the United States and of this Commonwealth. I took a similar oath at the beginning of my tenure on this Court. I do not now take, and never have taken, such oath lightly. Pursuant to my sworn duties, I will participate in the decision and consideration of Appellant's matter without bias or prejudgment.

Accordingly, based upon the foregoing considerations, I conclude that petitioner's motion requesting my recusal in this matter should be, and it hereby is, denied.

## *ORDER*

AND NOW, this 8th day of June, 1995, it is hereby OR-DERED that Petitioner's Motion for Recusal from Consideration of Application for Extraordinary Relief in the Form of a Stay of Execution Pending the Filing and Resolution of a Petition for a Writ of Certiorari, and For Exercise of King's Bench Powers is DENIED.