J-S01014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :             PENNSYLVANIA
                                 :
           v.                      :
                                 :
                                 :
TERRANCE WILLIAMS              :
                                 :
            Appellant           :     No. 2515 EDA 2018

Appeal from the PCRA Order Entered October 20, 1998
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0823621-1984

BEFORE: BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                          **FILED JUNE 22, 2020**

Terrence Williams appeals *nunc pro tunc* from the October 20, 1998 order denying Appellant's first petition for relief under the Post-Conviction Relief Act ("PCRA"). After careful review, we conclude that Appellant's request for the reinstatement of his appellate rights was untimely filed under the PCRA.[1] Thus, we vacate the PCRA court's July 31, 2018 order reinstating Appellant's appellate rights *nunc pro tunc* and quash this appeal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This petition constitutes Appellant's fifth filing under the PCRA. Rather than asserting new claims for relief under the PCRA, Appellant requested the reinstatement of his appellate rights with respect to his first PCRA petition that was previously appealed of right to our High Court in 2004, which affirmed the PCRA court's denial of Appellant's first petition. The Commonwealth did not oppose Appellant's request for reinstatement, and the PCRA court granted it. As explained *infra*, our analysis focuses upon the timeliness of Appellant's request for reinstatement of his appellate rights, which we raise *sua sponte*.

For our purposes, the factual history of this case is straightforward. Appellant's underlying conviction relates to the June 11, 1984 murder of Amos Norwood (the "victim"), which Appellant committed with his co-defendant, Marc Draper. On that day, Appellant and Mr. Draper robbed, bound, and beat the victim to death in a secluded area near Ivy Hill Cemetery in Philadelphia, Pennsylvania. *See Commonwealth v. Williams*, 570 A.2d 75, 77-79 (Pa. 1990) ("*Williams I*"); PCRA Court Opinion, 1/13/99, at 1-2. Ostensibly, the defendants were motivated in their crimes by recent gambling losses. They used the victim's cash and credit cards to continue their escapades in Atlantic City, New Jersey. However, due to "incautious" usage of the victim's credit cards, the defendants were quickly implicated in the victim's death. Appellant fled the jurisdiction, but Mr. Draper "made a full confession, describing his own role in the murder and [Appellant's] role in the killing and aftermath." Eventually, Appellant also turned himself in and proceeded to trial.

During the trial, the then-district attorney of Philadelphia, Ronald Castille, approved the trial prosecutor's request to seek the death penalty against Appellant. Ultimately, a jury found Appellant guilty of first-degree murder, criminal conspiracy, and robbery. With respect to first-degree murder, the jury returned a verdict of death. On the remaining charges, Appellant was sentenced to an aggregate, concurrent term of fifteen to thirty years of imprisonment. On direct appeal, our Supreme Court upheld Appellant's conviction. Thereafter, Appellant filed three unsuccessful petitions

for PCRA relief that were reviewed by the Pennsylvania Supreme Court on appeal. *See Commonwealth v. Williams*, 863 A.2d 505, 523 (Pa. 2004) ("*Williams II*"), *Commonwealth v. Williams*, 909 A.2d 297 (Pa. 2006) (*per curiam* order); *Commonwealth v. Williams*, 962 A.2d 609 (Pa. 2009) (same). Appellant also sought *habeas* relief from the U.S. Court of Appeals for the Third Circuit, which denied his request. *See Williams v. Beard*, 637 F.3d 195, 238 (3d Cir. 2011) ("*Williams III*").

During this same period of time, then-DA Castille was elected to serve as a justice of the Pennsylvania Supreme Court.[2] He participated, *inter alia*, in the adjudication of *Williams II* by voting with the majority to affirm the dismissal of Appellant's first PCRA petition. There is no indication in the certified record before us that Appellant ever sought then-Justice Castille's recusal from, or raised any objection regarding his participation in, these earlier proceedings. On March 9, 2012, Appellant filed his fourth PCRA petition. Appellant's petition asserted, *inter alia*, that the prosecutor had procured "false testimony" from Mr. Draper. Appellant did not raise any claim or argument related to then-Chief Justice Castille's participation in the earlier proceedings presented in Appellant's fourth PCRA petition. The trial court directed the Commonwealth to produce various "previously undisclosed files"

---

[2] Specifically, then-Justice Castille was elected to the bench in 1993, and served as a justice of the Pennsylvania Supreme Court from January 1994 until he retired in December 2014. He served as the chief justice of the Pennsylvania Supreme Court from January 2008 until his retirement.

- 3 -

related to Appellant's claims of prosecutorial misconduct, which happened to include a memorandum signed by then-DA Castille approving the pursuit of the death penalty in Appellant's case.

Separate from this apparent revelation, the PCRA court granted Appellant's fourth PCRA petition on the grounds that the trial prosecutor had suppressed material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and engaged in prosecutorial gamesmanship. The PCRA court stayed Appellant's execution and ordered new sentencing proceedings. The Commonwealth appealed to the Pennsylvania Supreme Court, where Appellant sought the recusal of Chief Justice Castille, who denied the request without explanation. Thereafter, the Pennsylvania Supreme Court vacated the stay of execution entered by the PCRA court and reinstated Appellant's death penalty. *See Commonwealth v. Williams*, 105 A.3d 1234, 1245 (Pa. 2014) ("*Williams IV*").

Appellant filed a petition for a writ of *certiorari* with the U.S. Supreme Court, which granted it. *See Williams v. Pennsylvania*, ___ U.S. ___, 136 S.Ct. 1899, 1904 (2016) ("*Williams V*"). It concluded that Appellant's due process rights were violated by Chief Justice Castille's participation in the adjudication of Appellant's case in *Williams IV*.[3] Accordingly, the U.S.

---

[3] There was no indication that then-DA Castille had knowledge of, or participated in, the prosecutorial misconduct identified by the PCRA court in adjudicating Appellant's fourth PCRA petition. *See Williams V*, *supra* at

- 4 -

Supreme Court vacated **Williams IV** and remanded for "further proceedings not inconsistent with this opinion."

On remand, the Pennsylvania Supreme Court equally split over whether Appellant was entitled to relief. **See Commonwealth v. Williams**, 168 A.3d 97 (Mem) (Pa. 2017) (*per curiam* order affirming based upon an equally divided court). Thus, the PCRA court's order entering a stay of execution and ordering a new penalty phase was affirmed. On December 29, 2017, Appellant was resentenced to life without parole as to his first-degree murder conviction. The remainder of Appellant's sentence was identical to the original order.

Contemporaneously with his resentencing, Appellant filed his fifth PCRA petition seeking the reinstatement of his appellate rights with respect to his first PCRA petition, which was adjudicated by our Supreme Court in **Williams II** over sixteen years ago. Specifically, Appellant sought reinstatement upon the basis that then-Justice Castille had also participated in that adjudication. **See** Appellant's Fifth PCRA Petition, 10/10/17, at ¶¶ 5, 7. The Commonwealth did not oppose the petition. On July 31, 2018, the PCRA court granted Appellant's request and reinstated his appellate rights:

> [Appellant's PCRA] appellate rights are hereby reinstated *nunc pro tunc* for appellate review from the PCRA Court's October 20, 1998 dismissal of the petition filed under the instant case number.

---

1908 ("[T]here is no indication that Chief Justice Castille was aware of the alleged prosecutorial misconduct . . . ."). Indeed, the U.S. Supreme Court never concluded that Chief Justice Castille had committed actual misconduct, but only found that his participation in the consideration of Appellant's appeal in **Williams IV** created an "unacceptable risk of actual bias." **Id**.

- 5 -

[Appellant's] prior appeal of this matter, [**Williams II**], was resolved in a manner that implicates due process pursuant to [**Williams V**].

Order, 7/31/18, at unnumbered 1. This order was not appealed. Rather, all parties proceeded with the instant *nunc pro tunc* appeal that was granted by the PCRA court, and which arguably lies from the denial of Appellant's first PCRA petition in October 1998. Under that assumption, both Appellant and the PCRA court have complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

1. Did the Commonwealth use its peremptory strikes in a racially discriminatory manner, thus depriving Appellant of his rights under the Sixth, Eighth, and Fourteenth Amendment to the [U.S.] Constitution and Article I, §§ 1, 9, 13, and 26 of the Pennsylvania Constitution? Was Appellant denied a full and fair opportunity to litigate this claim?

2. Did the [PCRA] court err in failing to grant a post-conviction hearing on Appellant's claims and did the court err in its limitation of counsel's examination of particular witnesses, including its refusal to allow counsel an opportunity to review witnesses' notes?

3. Did the prosecution fail to disclose portions of its plea agreement with key witness Marc Draper and instead elicit false testimony in its place?

Appellant's brief at 2-3. With respect to our standard of review, we examine whether the PCRA court's determinations are supported by the record and are free of legal error. **Commonwealth v. Watkins**, 108 A.3d 692, 701 (Pa. 2014). We apply a *de novo* standard of review with respect to the PCRA court's legal determinations. **Id**.

- 6 -

Before we can address the merits of Appellant's issues, we must determine if the PCRA court had the necessary jurisdiction to restore Appellant's appellate rights such that this *nunc pro tunc* appeal is properly before us for review. **See Commonwealth v. Ballance**, 203 A.3d 1027, 1030-31 (Pa.Super. 2019). With specific reference to this case, the timeliness of a PCRA petition is a jurisdictional requisite that "may not be altered or disregarded in order to address the merits of the petition." **Commonwealth v. Laird**, 201 A.3d 160, 161-62 (Pa.Super. 2018). "In other words, Pennsylvania law makes clear **no court** has jurisdiction to hear an untimely PCRA petition." **Ballance**, **supra** at 1031 (emphasis in original) (citing **Commonwealth v. Robinson**, 837 A.2d 1157, 1161 (Pa. 2003)). Finally, "[a]lthough neither party nor the [PCRA court] has addressed this matter, it is well-settled that we may raise it *sua sponte* since a question of timeliness implicates the jurisdiction of our Court." **Commonwealth v. Hutchins**, 760 A.2d 50, 53 (Pa.Super. 2000).

The PCRA requires that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . . ." 42 Pa.C.S. § 9545(b)(1). Under the PCRA, a judgment of sentence becomes "final" at the conclusion of direct review, "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3).

On February 8, 1990, the Pennsylvania Supreme Court affirmed Appellant's judgment of sentence on direct appeal. *See Williams I*, *supra* at 84. Appellant did not appeal to the U.S. Supreme Court, and his time to do so expired on May 9, 1990. *See* U.S. Sup. Ct. Rule 13(1). Consequently, Appellant had until May 9, 1991 to file a timely PCRA petition. Thus, Appellant's PCRA petition seeking the reinstatement of his appellate rights was untimely filed by more than 25 years, which Appellant acknowledges in the petition. *See* Appellant's Fifth PCRA Petition, 10/10/17, at ¶ 23.

This jurisdictional time bar is subject to three statutory exceptions, which requires the petitioner to allege and prove at least one of the following:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). "Where the petition alleges, **and the petitioner proves**, that an exception to the time for filing the petition is met, the petition will be considered timely." *Commonwealth v. Sanchez*, 204 A.3d 524, 526 (Pa.Super. 2019) (emphasis added).

In pertinent part, Appellant's PCRA petition seeking the reinstatement of his appellate rights *nunc pro tunc* alleged that all three of these exceptions should apply to his circumstances. **See** Appellant's Fifth PCRA Petition, 10/10/17, at ¶¶ 22-27. We will address his arguments *seriatim*.

Appellant has discussed the "government interference" and "newly discovered facts" exceptions collectively in his petition, as follows:

> This Petition meets the requirements of 42 Pa.C.S. § 9545(b)(1)(i) & (ii) because the facts upon which the claim is predicated – District Attorney Castille's significant, personal involvement in this very case – were suppressed by the Philadelphia District Attorney's Office and by [Chief Justice] Castille from the outset of this case. Both the District Attorney's Office and [Chief Justice] Castille for years made misleading statements minimizing and misrepresenting his role in capital prosecutions. The Supreme Court's opinion in [**Williams V**] illuminates the factual basis, not previously known to [Appellant], to establish that, through their mischaracterizations of District Attorney Castille's role in capital prosecutions and through their failure to disclose documents and information reflecting his actual role, the Philadelphia District Attorney's Office and [Chief] Justice Castille interfered with [Appellant's] ability to present this claim earlier. Similarly, because of those non-disclosures and mischaracterizations, the facts upon which this claim is predicated could not have been ascertained earlier by the exercise of due diligence.

**Id**. at ¶ 24. We must disagree with Appellant's assertions and claims. Overall, Appellant's analysis takes significant factual liberties and argues for an unsustainable enlargement of the holding in **Williams V**. While the U.S. Supreme Court addressed the narrow issue of whether Chief Justice Castille should have granted a timely recusal request from Appellant in **Williams IV**, the Court never opined as to whether these allegations were sufficient to satisfy the timeliness requirements of the PCRA in a subsequent petition.

With respect to governmental interference, Appellant has offered nothing but bald assertions that the Commonwealth or Chief Justice Castille suppressed or mischaracterized then-DA Castille's involvement in Appellant's case. In the passage above, Appellant has made no offer of proof, nor even pleaded sufficient facts to establish the applicability of this exception.

There is simply no evidence suggesting that this information was ever concealed by the Commonwealth at any point in the underlying proceedings.[4] Tellingly, Appellant provides no citations to the factual record in support of these allegations concerning alleged governmental interference. As such, Appellant has not established the applicability of this exception. *See Commonwealth v. Marshall*, 947 A.2d 714, 720-21 (Pa. 2008) (rejecting invocation of exception at § 9545(b)(1)(i) where the petitioner could not substantiate "general, unsupported allegations").

Along similar lines, we are unpersuaded by Appellant's arguments concerning "newly discovered facts." We do not dispute that Appellant first learned of the signed memorandum authorizing the pursuit of the death penalty in his case during the pendency of Appellant's successful PCRA appeal in *Williams V*, *supra* at 1904. However, the pertinent question under

---

[4] On this point, we discern that Appellant is conflating the merits of his *nunc pro tunc* claims alleging prosecutorial misfeasance, with his burden of proof concerning the timeliness exceptions to the PCRA. No matter how compelling the merits of an argument may be, we may not ignore jurisdictional requirements in order to reach them.

§ 9545(b)(1)(ii) is not when Appellant discovered this information, but whether he could not have discovered it sooner through statutorily mandated "due diligence." *See Sanchez*, *supra* at 526 ("Due diligence demands that the petitioner take reasonable steps to protect his own interests; **a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence.**" (emphasis added)).

Appellant's argument concerning due diligence is threadbare and merely parrots the same empty allegations of governmental interference discussed above. Critically, Appellant has failed to demonstrate why he could not have learned of then-Justice Castille's involvement in his case sooner. *Id*. In the absence of any competent evidence suggesting obstruction of this information by the Commonwealth, Appellant has no explanation for waiting nearly two decades to pursue claims concerning then-Justice Castille's participation.

While a petitioner is not required to exercise "perfect vigilance," he is bound to undertake "reasonable efforts . . . to uncover facts that may support a claim for collateral relief." *Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa.Super. 2018). Instantly, there is no indication that Appellant ever sought any information concerning then-Justice Castille's involvement, or pursued any investigation until he was made aware of the signed memorandum by the happenstance of discovery. *See Williams V*, *supra* at 1904.

This paucity of diligence is especially troubling given that, both as district attorney and on our Supreme Court, Chief Justice Castille's association

with the death penalty was public and well-documented according to Appellant.[5] In fact, claims related to Chief Justice Castille's requested recusal in other capital cases related to his service as Philadelphia's DA were addressed by the Pennsylvania Supreme Court in published opinions significantly predating Appellant's "discovery" of the signed memorandum. *See Commonwealth v. Williams (Roy)*, 732 A.2d 1167, 1174 (Pa. 1999) (addressing a request for recusal of then-Justice Castille in a death penalty case), *Commonwealth v. Jones*, 663 A.2d 142, 144 (Pa. 1995) (same).

Although the exact contours of Chief Justice Castille's involvement in Appellant's case may not have been precisely known, that information appears to us to have been discoverable through the exercise of due diligence. This is particularly so in light of Chief Justice Castille's decades of service as a highly visible public servant, in roles whose potential connection to Appellant's case were obvious. In sum, Appellant has failed to offer any evidence establishing his due diligence. Accordingly, we conclude that the timeliness exception at § 9545(b)(1)(ii) is inapplicable to Appellant's petition. *See Commonwealth v. Stokes*, 959 A.2d 306, 311 (Pa. 2008) ("[B]ecause Appellant failed to

---

[5] Appellant's petition contains a two-page long parenthetical footnote meticulously documenting Chief Justice Castille's public association with the death penalty in Pennsylvania periodicals around the time of his election to the Pennsylvania Supreme Court in 1993. *See* Appellant's Fifth PCRA Petition, 10/10/17, at ¶ 41 n.1. Prior to his election to our High Court, then-DA Castille was elected to his post as Philadelphia's district attorney in 1985. He served in that role from January 1986 until March 1991.

explain why he did not request these files earlier, he did not establish the due diligence required to excuse him from over a decade of inaction.").

With respect to the retroactive-constitutional-right exception codified at § 9545(b)(1)(iii), Appellant asserts that **Williams V** recognized a new constitutional right and held that it applies retroactively. **See** Appellant's Fifth PCRA Petition, 10/10/17, at ¶ 25. We disagree.

In order to gain the benefit of this exception, Appellant must prove that: (1) a "new" constitutional right has been recognized by either the U.S. Supreme Court or the Pennsylvania Supreme Court; and (2) that the right "has been held" to apply retroactively. **Commonwealth v. Copenhefer**, 941 A.2d 646, 649 (Pa. 2007). Appellant cannot satisfy either requirement.

**Williams V** did not recognize a "new" constitutional right but merely applied existing precedent concerning due process. **See Williams V**, **supra** at 1905-07 (noting the "unconstitutional potential for bias" that exists "when the same person serves as both accuser and adjudicator in a case") (citing **In re Murchison**, 349 U.S. 133, 136-37 (1955)).[6] Contrary to Appellant's conclusory arguments, the U.S. Supreme Court's holding in **Williams V** did not announce a new rule of law, but merely granted Appellant relief under existing precedent. **See Commonwealth v. Wojtaszek**, 951 A.2d 1169,

---

[6] **See also Caperton v. A.T. Massey Coal Co., Inc.**, 556 U.S. 868, 881 (2009), **Puckett v. U.S.**, 556 U.S. 129, 141 (2009), **Withrow v. Larkin**, 421 U.S. 35, 57 (1975).

1172-73 (Pa.Super. 2008) (holding precedent not announcing new, retroactive constitutional right fails to satisfy § 9545(b)(1)(iii) requirements).[7] Along similar analytical lines, Appellant has presented no support for his contention that the U.S. Supreme Court's holding in **Williams V** announced a constitutional right that is retroactive in nature. **Id**.

Overall, Appellant has not satisfied either of the requirements necessary to invoke the timeliness exception at § 9545(b)(1)(iii). **See Wojtaszek**, **supra** at 1172-73. Thus, it does not apply in this case.

Based on the foregoing discussion, we conclude that Appellant's fifth PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc* failed to assert and prove a valid timeliness exception. **See** 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Therefore, the PCRA court had no jurisdiction to restore Appellant's appellate rights. Accordingly, we vacate the PCRA court's July 31, 2018 order granting Appellant leave to appeal *nunc pro tunc* and quash this appeal for lack of jurisdiction. **Accord Ballance**, **supra** at 1033.

Order vacated. Appeal quashed for lack of jurisdiction.

---

[7] This conclusion is in parity with recent persuasive holdings from this Court explicitly refusing to hold that **Williams V** announced a new, retroactive constitutional right. **See Commonwealth v. Ivey**, 2020 WL 1515893 at *4 (Pa.Super. March 30, 2020) (non-precedential decision), **Commonwealth v. Lee**, 2019 WL 4131429 at *8 (Pa.Super. August 30, 2019) (same).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/22/20</u>