J-S99001-24

2025 PA Super 11

| IN RE: CUMBERLAND COUNTY DISTRICT ATTORNEY'S OFFICE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: CUMBERLAND COUNTY DISTRICT ATTORNEY'S OFFICE | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1368 MDA 2024 |

Appeal from the Order Entered September 4, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-MD-0000597-2024

OPINION PER CURIAM:                     **FILED: JANUARY 17, 2025**

The Cumberland County District Attorney's Office (D.A.'s Office) appeals[1] from the order, entered in the Court of Common Pleas of Cumberland County, denying its motion:  (1) seeking recusal of the Honorable Edward E. Guido, President Judge, from all criminal matters prosecuted by the D.A.'s Office, due to the bias of his law clerk, Crystle Craig, Esquire; and (2) asking for a full and fair hearing, before an impartial tribunal, to fully develop the

_____

[1] Generally, an order denying a Commonwealth's motion for recusal is interlocutory and is not considered final under Pa.R.A.P. 341.  However, our Supreme Court has held that, where the Commonwealth certifies in its notice of appeal that the denial of the recusal motion substantially handicaps the prosecution, it is appealable as of right under Pa.R.A.P. 311(d).  **Commonwealth v. White**, 910 A.3d 648, 655 (Pa. 2006).  In an affidavit attached to its notice of appeal, the Commonwealth asserts that the order denying its request for recusal/disqualification "substantially handicaps the Commonwealth's prosecution because a biased court order can hamper its ability to present its case," and, thus, is appealable as of right pursuant to Pa.R.A.P. 311(d).  Affidavit, 9/20/24, at 2.  Thus, we conclude that this appeal is properly before us.

record in the matter (miscellaneous recusal case). The order also directs that the trial court resume handling of criminal matters immediately[2] and directs that Attorney Craig shall not participate in or discuss with the court any matter involving the D.A.'s Office through December 31, 2025.[3] Because President Judge Guido has directed Attorney Craig not to participate in matters involving the D.A.'s Office, we do not have substantial doubt regarding the judge's ability to preside impartially over those cases.[4] Accordingly, after careful review, we affirm.

On August 6, 2024, the Commonwealth filed a motion seeking President Judge Guido's recusal from "all criminal matters" due to allegations of "bias on the part of [his] law clerk[, who acts as] a gatekeeper for [her] assigned [j]udge[.]" Commonwealth's Motion to Recuse/Disqualify President Judge Edward E. Guido, 8/6/24, at 1, 3. The Commonwealth's motion alleged that on several occasions, Attorney Craig demonstrated "hostility, bias, and [a]

_____

[2] President Judge Guido has indicated that he is required, by the Pennsylvania Constitution, to retire from the bench at the end of 2025. **See** Trial Court Opinion, 9/4/24, at 8.

[3] The trial court's order qualifies this ruling by stating that "[w]e intend to preside over criminal matters pending appeal unless the District Attorney obtains an emergency order from the Superior Court precluding us from doing so." Order, 9/4/24. We reiterate that our holding today is largely based upon the fact that Judge Guido has decided he will not allow Attorney Craig to participate in *any* criminal matters involving the D.A.'s Office until his retirement at the end of 2025.

[4] **See In the Interest of McFall**, 617 A.3d 707, 713 (Pa. 1992) ("Recusal is required wherever there is a substantial doubt as to a jurist's ability to preside impartially.").

lack of impartiality . . . [that] creates [the] actual appearance of bias on the

part of the [c]ourt or[,] at a minimum[,] the appearance of bias."[5] *Id.* at 4.

_____

[5] Several incidents involving Attorney Craig were alleged to have occurred, including:

- On 3/31/23, D.A.'s Office filed a complaint with the Cumberland County Human Resources Department concerning Attorney Craig's aggressive and unprofessional behavior;
- On 10/6/23, Attorney Craig sent email to a defense attorney criticizing his handling of a case and implying he was waiving his client's rights at the request of D.A.'s Office;
- On 4/19/24, Attorney Craig is alleged to have aggressively confronted attorney while the attorney was meeting with a child sexual assault victim in another judge's courtroom, resulting in another report to HR and jury trial being continued so victim could recover from incident;
- On 6/27/24, the D.A.'s Office was advised by the County Solicitor that Attorney Craig had filed a Right to Know Law inquiry seeking emails "expressing or discussing court or courtroom security, court impartiality [and anything] concerning the cancellation of any pre-trial conference and/or trial in [a specific] case." Attorney Craig requested that the results be sent to her private email address;
- On 6/27/24, Attorney Craig allegedly entered courtroom and sat near child victim's mother (who had been involved in earlier incident with Attorney Craig) while they were waiting for the verdict. D.A. believed law clerk was not permitted in the courtroom when the victim and her mother were present, so D.A. requested Sheriff's office ask Attorney Craig to move to different seat, she refused to do so and threatened to sue Sheriff's Deputy for asking her to move seats. Attorney Craig later sent email to Deputy attaching caselaw and copied PJ Guido on email;
- On 6/28/24, Cumberland County Human Resources told D.A.'s Office Attorney Craig had filed a complaint against attorney that asked Sheriff's Deputy to have her change seat in courtroom alleging the Sheriff's department was acting at the direction of the D.A.'s Office;
- On 6/28/24, D.A.'s Office met *in camera* with counsel and PJ Guido to discuss *Baltimore* recusal case and D.A. requested Attorney Craig not be present; however, court advised D.A. that she would be present and, when court made aware of Attorney Craig's alleged bias, trial judge told D.A. he should file motion for hearing; and

*(Footnote Continued Next Page)*

*See id.* at 9 ("The Commonwealth avers Attorney Craig is unable to provide the [c]ourt impartial and unbiased legal advice. [Attorney Craig's] bias, prejudice, and lack of impartiality toward the [D.A.'s] Office . . . will ultimately influence legal advice provided to the [c]ourt"). The motion also noted that, since the Commonwealth brought this matter to the trial court's attention, there had been "no measurable change in the attitude or behavior of Attorney Craig." *Id.*

The D.A.'s Office first raised the issue of recusal with the court in late-June 2024, in connection with a death penalty case (*Baltimore* recusal case) before it.[6] The basis for the request was that Attorney Craig had been involved in an incident in another courtroom that "gave the appearance of [her] bias" against the D.A.'s Office. When faced with the recusal request, President Judge Guido clarified with the D.A. that the issue was not court bias, but, rather, due to Attorney Craig's conduct . . . "and her influence over [President Judge Guido]," she has created an appearance of bias against the D.A.'s

_____

- On 7/1/24 Sheriff met with PJ Guido about Attorney Craig's courtroom behavior towards deputies, and PJ Guido called his law clerk a "crusader."

[6] The D.A.'s office filed a similar motion in that case, *Commonwealth v. Baltimore*, CP-21-CR-2097-2023. On August 1, 2024, PJ Guido denied the motion without a hearing. On August 5, 2024, the Commonwealth appealed that decision to this Court. That appeal is currently pending. *See id.*, 1095 MDA 2024.

office."[7]  *See* N.T. *In Camera* Proceeding in **Baltimore** Recusal Case, 8/13/24, at 2.  The D.A.'s Office later filed a related request in the **Baltimore** matter to hold an evidentiary hearing on the recusal motion and have the hearing held by a different judge "due to the alleged need for testimony from Judge Guido's law clerk, and, potentially, Judge Guido."  Commonwealth's Concise Statement of Errors Complained of on Appeal, 8/19/24, at 1.  Following the D.A.'s submission of stipulated exhibits and offers of proof from witnesses, PJ Guido denied the Commonwealth's request for a different judge to decide the motion and then denied the recusal motion without a hearing.  **See** Order, 7/23/24; Order 8/1/24.  However, President Judge Guido ordered that another law clerk be assigned to work on criminal matters and that Attorney Craig "shall not work with this [c]ourt on this case or any other criminal matter for 30 days [or, if an appeal is perfected,] . . . until said appeal is resolved. **Id.**, 8/1/24.   On August 5, 2024, the District Attorney filed an appeal from the recusal denial in the **Baltimore** case. **See Commonwealth v. Baltimore**, 1095 MDA 2024.

Following the appeal from the order denying recusal in the **Baltimore** case, the D.A.'s Office filed the instant August 6, 2024 recusal motion at a

_____

[7] Interestingly, as part of his reason justifying his denial of the recusal motion in the **Baltimore** case, PJ Guido did not condone his law clerks alleged behaviors and, in fact, acknowledged that Attorney Craig's alleged misconduct "is not just [against] the District Attorney's Office, but also Defense Counsel, the Sheriff's Office, Court Administration[,] and even this [c]ourt." Trial Court Opinion in **Baltimore** Recusal Case, 10/17/24, at 7-8.

miscellaneous docket,[8] now requesting President Judge Guido recuse on *all* cases involving its office. ***See supra*** at 2-4. On August 9, 2024, President Judge Guido held an *in camera* proceeding on this miscellaneous recusal case with Assistant District Attorneys (ADAs) Elizabeth L. Judd and Jennifer A. Robinson to address the D.A.'s Office's request to have the judge recuse from *all* Cumberland County criminal matters. ***See*** Trial Court Opinion, 9/4/24, at 4 (trial judge indicating he scheduled conference where he was advised "for the first time that the [D.A.'s] Office was seeking our recusal based upon its contention that [Attorney] Craig's actions 'tainted the bench.'"). Addressing the allegation that *he* would be implicitly biased or tainted by his law clerk in such matters, President Judge Guido stated:

> If your motion is that the bench is tainted, I can assure you that I have examined my conscience thoroughly, and I am not in any way tainted by any of the personal matters that involve [Attorney] Craig or any alleged animosity between [Attorney] Craig and the D.A., and I don't need a hearing on that matter and would not have a hearing on that matter. I think I'm well within my rights to deny that motion.
>
> The only thing I have been exploring is whether or not having [Attorney] Craig serve as my law clerk would create an appearance of bias. I had determined, based upon your allegations in ***Baltimore***, that they did not, and I took all of the allegations as true and was prepared to address that. I thought I resolved the matter by recusing Attorney Craig from all criminal cases going forward **until it[']s been fully resolved, giving you the opportunity for appellate review**.

---

[8] ***In re: Cumb. Co. D.A.'s Office***, 1338 MDA 2024. In accordance with this Court's Internal Operating Procedure, President Judge Anne E. Lazarus assigned this matter to a special submit panel.

N.T. *In Camera* Proceedings in Miscellaneous Docket Recusal, 8/9[9]/24, at 3 (emphasis added).

The trial court concluded that it would only request an out-of-county judge be appointed to preside over a hearing if it found the recusal request had merit. After reviewing the evidence submitted by the parties and "resolving all issues of credibility in favor of the District Attorney," the court determined that neither a hearing nor recusal was necessary. President Judge Guido further felt that as long as he excluded Attorney Craig from matters involving the D.A.'s office, he did not need to reassign Attorney Craig to another judge. Finally, the court believed that the recusal motion should be denied where major administrative and practical issues also come to play in the matter—i.e., the significant number of cases on appeal and the need to help other jurists handle criminal trials.

At an August 13, 2024 *in camera* conference on the **Baltimore** recusal matter, Cumberland County District Attorney Sean M. McCormack told the president judge that he was hesitant to have the miscellaneous recusal matter pending and allow Judge Guido to participate in trials as long as Attorney Craig wasn't involved because there had yet to be a "fair hearing" to develop the

---

[9] By order, dated August 21, 2024, the court corrected the date on the transcript of the proceedings to reflect August **9**, 2024.

facts and "question [Attorney Craig]."[10]  **See** N.T. *In Camera* Proceeding in **Baltimore** Recusal Case, 8/13/24, at 7 (D.A. stating he did not "think the [D.A.'s Office] had a fair opportunity to present [its] full case to Your Honor or another judge as to why . . . [the president judge] should not be hearing cases involving the Commonwealth."[11]).  The D.A. did not object to the **Baltimore** recusal case record being incorporated into the instant

_____

[10] At the August 13, 2024, *in camera* conference, D.A. McCormack advised the president judge that his office would continue to appeal the **Baltimore** recusal decision and clarified that the instant recusal request was grounded in Attorney Craig's actions "with the caveat that her influence over you . . . [is] what [the D.A. was] concerned about."  N.T. *In Camera* Proceedings in **Baltimore** Recusal Case, 8/13/24, at 2.  The D.A. also noted that his office was concerned that the president judge had changed course when he initially stated "he [would] have a hearing [on the motion and now has] refused to have a hearing in the matter."  **Id.** at 2.  The D.A. expressed his desire to keep the **Baltimore** recusal matter separate from the instant recusal matter (on miscellaneous docket CP-21-MD-597-2024), stating "my concern is if I am saying that the [c]ourt needs to be removed from the **Baltimore** case, to be consistent throughout, I need to say that the [c]ourt needs to be removed from any cases [to be heard] before you as long as this issue is still outstanding."  **Id.** at 4.  The D.A. continued to express his concerns, even if Attorney Craig were to recuse from participating in the **Baltimore** case, because "she still works for the [c]ourt . . . and Your Honor . . . has a very close relationship with her."  **Id.** at 8-9.

[11] Technically, the D.A.'s recusal request applies to all matters involving the District Attorney's Office, not all matters involving the Commonwealth, which could also include non-criminal matters involving the Attorney General's Office.

miscellaneous docket recusal matter, but maintained that he would still be requesting a hearing in the instant miscellaneous recusal case. *Id.* at 12.[12]

On August 14, 2024, the court held another conference on the miscellaneous recusal case, at which President Judge Guido told the District Attorney that he would not be reassigning Attorney Craig to a senior judge, but that the law clerk would not participate in any criminal matters and would not "discuss with me any matters involving the D.A.'s [O]ffice aside from this [recusal] matter." N.T Proceedings, 8/14/24, at 2. The court then scheduled a status conference on the instant matter for September 10, 2024, so that the D.A.'s Office had time to prepare offers of proof for the court's consideration of whether a hearing on the recusal motion was necessary. *Id.*

However, on September 4, 2024, the trial court entered an order denying the D.A.'s motion for recusal, cancelling the previously scheduled status conference, and directing that Attorney Craig not participate in or discuss with the court any matter involving the D.A.'s Office through December 31, 2025. *See* Order, 9/4/24. The D.A.'s Office filed a timely

---

[12] President Judge Guido suggested to the D.A. "temporarily switch[ing Attorney Craig] to be [a] senior [judge's] clerk and [have the senior judge's] clerk [work for the president judge]." *Id.* at 8. Due to the fact that the record does not reveal how long Attorney Craig has served as Judge Guido's law clerk, this Court would suggest that, if nothing else, best practice would have been for the trial judge to reassign Attorney Craig to work for another judge so as to remove *any* appearance or claim of impartiality.

notice of appeal from that order.[13]  On appeal, it raises the following issues

for our consideration:

> (1)     Whether the trial court erred as a matter of law by failing to request that an out[-]of[-]county judge preside over the Commonwealth's Motion to Recuse, where the trial court's permanent judicial law clerk was the subject of the motion and the trial court was, at a minimum, a fact witness to the proceedings?

> (2)     Whether the trial court erred as a matter of law by dismissing the Commonwealth's Motion to Recuse where the permanent judicial law clerk employed by the trial court has exhibited a clear bias against the District Attorney's Office and created the appearance of impropriety by the trial court?

Appellant's Brief, at 8.

The D.A.'s Office's claims on appeal are two-fold:  (1) the trial judge

should have referred the recusal motion to an out-of-county judge for review

---

[13] On September 23, 2024, the D.A.'s Office filed an emergency application for stay or injunction pending this Court's disposition of its appeal.  Such applications "must ordinarily be made in the first instance to the trial court." Pa.R.A.P. 1732(1).  However, a stay request "may be made to the appellate court or to a judge thereof, but the application shall show that the application to the trial court for the relief sought is not practicable."  Pa.R.A.P. 1732(b). The Commonwealth indicated that the trial court indicated "it will continue to preside over criminal matters until this [] Court issues an [o]rder directing it to cease action" and that a stay is necessary to "prevent criminal cases being heard by a potentially biased trial court."  Emergency Application for Stay, 9/23/24, at 3.  Despite the fact that the trial court presumably lost jurisdiction once the Commonwealth filed its notice of appeal, the trial court entered an order on September 24, 2024, denying the application for stay.  On October 1, 2024, our Court vacated the briefing schedule in this matter, directed the D.A.'s Office to file its brief by October 10, 2024, and deferred the stay to the merits panel.  Having finally disposed of the matter on appeal, the motion for stay pending appeal is herein denied as moot.

and (2) the court erred in not recusing itself from all criminal matters because of the appearance of impropriety based on Attorney Craig's actions.

The D.A.'s Office contends that the trial court should have granted its request for an out-of-county judge to preside over a recusal hearing. Specifically, the D.A.'s Office claims that "where the judge or the judge's employee is a witness in the [subject] matter of the motion, this [C]ourt has held that the judge should refer the matter to another court for consideration." Appellant's Brief, at 27. Because President Judge Guido and his permanent law clerk were necessary witnesses (and the law clerk was the subject of the allegations related to the recusal motion), the D.A.'s Office asserts that the matter should have been referred to another jurist. Additionally, the D.A.'s Office claims that, at a hearing, testimony would bear out that the judge is the only person who has the authority to discipline Attorney Craig and that no disciplinary action has ever been taken against her for her offending conduct. *See id.* at 10 n.2.

"There are times when a judge must refer a recusal motion to another judge." *Commonwealth v. Dip*, 221 A.3d 201, 208 (Pa. Super. 2019). In *Dip*, the Commonwealth asserted that the trial judge's relationship to his domestic partner, a former assistant district attorney with the Philadelphia D.A.'s office, "present[ed] an appearance of impropriety" after the partner filed a race discrimination claim against the D.A.'s office in connection with her 2019 termination. *Id.* at 203. The trial judge had been involved in a

long-term relationship with the partner when he was elected to the Philadelphia Court of Common Pleas bench in 2015. Two months after his partner's termination, the D.A.'s office filed a recusal motion against the judge, noting at a recusal hearing that the motion was "not [based on] any specific partial or biased act," *id.* at 204, but also alleging that the trial judge had "engaged in several improper *ex parte* communications" with employees from the D.A.'s office. *Id.* Accordingly, the D.A.'s Office sought an evidentiary hearing before a different judge to address the factual allegations it made concerning these communications. *Id.* at 205.

The trial judge held three days of hearings to address the recusal issues. At the conclusion of the last hearing, the judge "acknowledged the existence of [the partner's] race discrimination charge . . . and appeared to admit the existence of his conversations with members of the [district attorney's office] about [his partner's] employment months earlier, as well as his *ex parte* communications about the [recusal] motions the day before." *Id.* The judge ultimately held the recusal motion under advisement. As a result, the D.A.'s Office filed recusal motions in *all* of its cases against the trial judge. *Id.* The trial judge denied the recusal motion with regard to one of those cases, *Dip*.[14]

_____

[14] Despite its repeated requests for the trial judge not to proceed in the case, the D.A.'s Office finally was successful in staying *Dip*'s trial *via* an emergency motion. *Id.*

On appeal, our Court affirmed the trial court's decision to deny the recusal motion in **Dip** without first ordering an evidentiary hearing before another judge. Finding that the trial court's actions were not an abuse of discretion, our Court noted that under the circumstances, a reasonable person would not doubt the trial judge's impartiality in all matters involving the D.A.'s office. Notably, and particularly relevant to the instant matter, our Court recognized the distinction between recusal sought by a District Attorney and attorneys from a law firm—one of the main differences being that, "if granted, its recusal motions would essentially evict [the trial judge] from the Criminal Division entirely, because the district attorney's office is a party to all but a few criminal cases heard in that division." **Id.** at 215.

It is well-established that "there is a presumption that the judge as the ability to determine if he can rule impartially and without prejudice." **In re Lokuta**, 11 A.3d 427 (Pa. 2011). Here, President Judge Guido was clear that if a hearing were necessary, he could not preside over it, but that an out-of-county judge would be appointed to conduct the hearing. **See** N.T. *In Camera* Proceedings, 8/8/24, at 4. However, after looking at the evidence presented by the D.A.'s Office, President Judge Guido was convinced that he had no doubt that he could be impartial when presiding over matters involving the D.A.'s Office, despite having Attorney Craig as his judicial law clerk. As an added protective measure, the judge prohibited Attorney Craig from

participating in any criminal matters involving the D.A.'s Office for the remainder of President Judge Guido's time on the bench.

As the movant, the D.A.'s Office has the burden of establishing evidence of bias, unfairness, or prejudice that "raises a substantial doubt as to [President J]udge [Guido's] ability to preside in an impartial matter" over all criminal cases in Cumberland County. *McFall*, *supra*. The D.A.'s Office claims that the trial judge has "at least the appearance of bias against [it] because [his] law clerk has repeatedly acted in an aggressive and unprofessional manner when she encounters employees of the [D.A.'s] Office." Appellant's Brief, at 27. *See also* D.A.'s Motion to Recuse/Disqualify President Judge Edward E. Guido, 8/4/24, at ¶ 10. Moreover, it claims that this bias had affected the trial judge and has resulted in the D.A.'s Office no longer being able to have "a full and fair proceeding when appearing before the [trial] court." Appellant's Brief, at 28. However, instantly, the only allegations of *actual* bias in the recusal motion are directed at the judge's law clerk, Attorney Craig. *See* D.A.'s Office's Motion to Recuse/Disqualify President Judge Edward E. Guido, 8/6/24, at ¶ 8; *see also* Appellant's Brief, at 28 (appearance of court's bias against D.A.'s office "*based on the law clerk's words and actions*, including filing complaints against Employees of the [D.A.'s] Office and requesting internal emails and other communications of attorneys employed by the District Attorney") (emphasis added); D.A.'s Office's Motion to Recuse/Disqualify President Judge Edward E. Guido, 8/6/24,

- 14 -

at ¶ 12 (D.A.'s Office stating it is "prepared to call several witnesses to attest to the behavior that demonstrates a pattern of bias and lack of impartiality" *on the part of Attorney Craig*); *id.* at ¶ 14 (D.A.'s Office averring *Attorney Craig* "is unable to provide the [c]ourt impartial and unbiased legal advice").

Based on the evidence of record, we conclude that the D.A.'s Office failed to meet its burden to prove that President Judge Guido must recuse from *all* criminal matters in the county where the basis of its motion is nothing more than a broad derivative-bias claim that a trial judge cannot be impartial in matters due to his close working relationship with his law clerk. In **Brown v. Wise**, 216 A.3d 1229 (Pa. Cmwlth. 2019) (Table),[15] our Commonwealth Court was faced with a similar allegation that a trial judge's impartiality was compromised due to his "direct control and close working relationship with [c]ourt [e]mployees." **Id.** at *12. As the **Brown** Court acknowledged, "a working relationship, by itself, does not establish grounds for recusal." **Id.**

The record contains no evidence of President Judge Guido's personal bias against the D.A.'s Office as a result of his professional relationship with Attorney Craig. Nothing was presented at the *in camera* conferences that raised even the appearance of the president judge's impropriety to warrant his disqualification. President Judge Guido's record speaks for itself—over 27

_____

[15] **See** Pa.R.A.P. 126(b) (unreported memorandum opinions of the Commonwealth Court filed after January 15, 2008, may be cited for persuasive value).

years of personal service committed to uphold the law and decide cases on the facts in Cumberland County. Without record evidence to dispute this commitment, we have no concern that President Judge Guido's continued involvement in criminal matters would undermine public confidence in the judiciary or that a reasonable person would question his impartiality in *all* cases involving the D.A.'s Office.

As we have iterated, it is the *trial judge*, in the first instance, who uses his or her own *individual discretion or conscience* to determine whether recusal is necessary. **See Commonwealth v. Jones**, 663 A.2d 142 (Pa. 1995) (emphasis added). In **Commonwealth v. Travaglia**, 661 A.2d 352 (Pa. 1995), our Supreme Court noted that:

> In disposing of a recusal request, a jurist must first make a conscientious determination of his or her ability to assess the case before the court in an impartial manner, free of personal bias or interest in the outcome. This is a personal and unreviewable decision that only the jurist can make. [**Goodheart v. Casey**, 565 A.2d 757, 764 (Pa. 1989)]. Once satisfied with that self-examination, the jurist must then consider whether or not continued involvement in the case would tend to undermine public confidence in the judiciary. [**Id.**] In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. Once the decision is made, it is final[.] **Reilley** [**by Reilly v. SEPTA**], 489 A.2d 1291[, 1300 (Pa. 1985)].

**Id.** at 370 (headnotes, footnote, and internal quotation marks omitted).

Instantly, President Judge Guido gave the following, considered reasons why he believes that he does not need to recuse from all criminal matters brought by the D.A.'s Office because of Attorney Craig's alleged misconduct:

- 16 -

- His relationship with Attorney Craig is purely professional and, while their relationship is close, it has never affected his handling of cases;

- The D.A.'s Office has not pointed to a single action on the court's part that would "even hint [at] taint" based on Attorney Craig's behaviors;

- The President Judge, like all judges, decides cases "based solely on the law and the facts;"

- Practically the recusal request for *all* criminal matters, not just a single case, effects the entire bench, so "certain [] conditions need to be weighed," i.e., efficient disposition of the county's criminal matters and the fact that the appeals process in instant matter will take up much of the short time President Judge Guido has left on bench, ***see Dip***, ***supra***;

- Attorney Craig's actions should be handled as a personnel matter, not via a recusal request and, in fact, the court has already involved the Cumberland County Human Relations Office by taking corrective action in May 2024; and

- President Judge Guido ordered that Attorney Craig not participate in any matters involving the D.A.'s Office until his judicial term expires.

*See* Trial Court Opinion, 9/4/24, at 7-8.

A jurist's decision on a recusal motion will be overturned on appeal only for an abuse of discretion. ***Chadwick v. Caulfield***, 834 A.2d 562, 571 (Pa. Super. 2003). After a thorough review of the certified record on appeal, we are confident that President Judge Guido did not abuse his discretion by denying the D.A.'s Office's request for an evidentiary hearing before an out-of-county judge or for denying the recusal motion. As the judge acknowledged, if, in fact, he believed that a hearing were necessary on the motion, he would have appointed an out-of-county judge to preside over such, due to the likelihood that he would be a material witness. However, upon self-

- 17 -

assessment, Judge Guido decided that a hearing was not needed where there was no evidence to support the claim that he was unable to be fair or impartial regarding matters involving the D.A.'s Office or that there was an appearance of his impropriety due to his working relationship with Attorney Craig.

Recognizing that our judges are honorable, fair, and competent, we think nothing less of Judge Guido's judgment and the personal discretion he exercised in determining that recusal was not warranted in the instant matter. ***Travaglia***, ***supra***; ***Reilley***, ***supra***.  Thus, we affirm.[16]

_____

[16] The trial court noted that it involved the Cumberland County Human Relations Office (CCHR) regarding Attorney Craig's alleged misconduct and that the office took "corrective action in May."  However, the D.A.'s Office claims the CCHR "does not have the authority to discipline Attorney Craig, nor has any discipline ever been taken against her for any conduct toward any other court official."  Appellant's Brief, at 10 n.2.  The D.A.'s Office also categorizes Attorney Craig's behavior as "unprofessional and unwarranted" and claims that she has "violated  [] standards that [create] the appearance of impropriety on the part of the trial court[.]"  ***Id.*** at 50.

Along those lines, we note that section 2.12 of the Code of Judicial Conduct (Code) provides that "a judge shall require staff, court officials and others subject to the judge's direction and control to act in a manner consistent with the judge's obligations under this Code."  Pa. Code Judicial Conduct 2.12.  Although, today, we find no basis for the trial judge to recuse himself from all cases involving the D.A.'s Office, we strongly remind the trial judge that the Code imposes an obligation on him to require his staff to act in a manner consistent with his own obligations under the Code.  We urge the trial judge to take this admonition very seriously and, considering the persistent and consistent nature of the allegations against his law clerk, reflect on his own obligation under this section of the Code.

- 18 -

Order affirmed.[17]

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/17/2025</u>

---

[17] Although the trial court has entertained several conferences in this matter, the lack of a hearing on the issue of Attorney Craig's behavior, on the record, impedes this court's ability to review the issue of the trial judge's recusal, which is at the heart of the matter. This matter presents a textbook case of how not to handle a recusal issue. While we believe that President Judge Guido has attempted to be unbiased in this matter, his actions and inaction with regard to his law clerk of long standing, might very well appear biased to a reasonable litigant appearing before him. Despite Judge Guido's assurances that he brought the matter of his law clerk's behavior to HR, in the absence of a proper record, our Court is not permitted to rule on the issue or to even opine as to whether HR has the authority to discipline a judicial law clerk.