J-A04031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BETH ANN ELLIS | : | No. 585 MDA 2024 |

Appeal from the Order Entered April 5, 2024
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000067-2022

BEFORE: LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:            **FILED OCTOBER 14, 2025**

The Commonwealth appeals from the grant of Beth Ellis's ("Ellis") post-sentence sufficiency challenge to her conviction of theft by deception,[1] the trial court's determination no restitution is due, and the trial court's denial of its recusal motion. We reverse the grant of post-sentence relief, vacate the judgment of sentence, affirm the denial of recusal, and remand for resentencing consistent with this opinion.

The relevant facts are as follows. Deanie Taylor King ("King"), who operates an elder care business, arranged in February 2019 for Ellis, who worked as an independent contractor, to provide home care assistance to

---

[1] **See** 18 Pa.C.S.A. § 3922.

Janet Gross ("Ms. Gross" or "the victim"). ***See*** N.T., 132-40.[2] Ms. King's caregivers are paid directly by their clients; Ms. King receives a portion of those payments. ***See*** N.T., at 298-300. Pursuant to the written contract between King and Ms. Gross (and a separate contract between King and Ellis), caregivers like Ellis may not assume fiduciary responsibilities for their clients. ***See id***. at 135-36. In approximately April 2019, Ellis called King and told her Ms. Gross's handwriting had become shaky and Ms. Gross had asked Ellis to fill out checks for her signature. King advised Ellis never to sign checks. ***See id***. at 141-42.

Sylvia Ingram ("Ingram"), Ms. Gross's friend and neighbor, and her husband talked daily to Ms. Gross and visited when Ms. Gross needed help. Ellis was not at Ms. Gross's house when the Ingrams made most of their visits although Ellis testified she worked six days a week. ***See id***. at 148-53. Ms. Gross paid Ingram $100 every twelve weeks to board and groom her dog; generally, Ellis wrote the check and Ms. Gross signed it. ***See id***. at 156-60.

In 2016, Ms. Gross granted Sandra Tome ("Tome"), her stepdaughter, her power of attorney. ***See id***. at 161-64. Tome wrote checks for Ms. Gross until April 2019, when Ellis began to do so. ***See id***. at 206-07, 213-14, 225-26. In September 2021, White Rose Credit Union ("the credit union")

---

[2] Ellis was one of Ms. Gross's many caregivers but eventually became Ms. Gross's sole caregiver at Ms. Gross's request. ***See id***. at 145-46, 218-19.

contacted Tome and expressed concerns about suspicious activity in Ms. Gross's account. *See id*. at 164-65, 205, 215. As a result of the call, Tome went to Ms. Gross's house and changed the locks, which prevented Ellis, who was on vacation, from entering the house. *See id*. at 165-66. Tome later reviewed Ms. Gross's bank statements and checks with the credit union's fraud department and discovered the numeric dollar amounts of some checks had been altered. Tome also looked at Ms. Gross's check register, which Ellis maintained, and noticed it did not always state the accurate dollar amounts of checks Ms. Gross signed (i.e. the register reflected a lower value than the dollar value of the check). *See id*. at 167-68.[3] Ms. Gross died in January 2022. *See* N.T. at 184.

Detective Brandy Goodling ("Detective Goodling"), testified she met with Tome and Ms. Gross in September 2021, and later obtained bank records from the credit union. *See id*. at 237-38. Detective Goodling examined eight checks Gross wrote to Ellis in 2021 that the credit union suspected might have been altered to pay an additional $3,550. Notably, the written amount of the checks did not appear to have been altered, suggesting that when Ms. Gross signed the checks they contained only the numeric dollar amounts, and the

_____

[3] Ms. Gross also had a Discover credit card, although it was almost always "maxed out" and had been well before September 2021. *See id*. at 169, 223.

words stating those dollar amounts were entered only after the numeric dollar figures were altered.  *See id*. at 239-44.

Detective Goodling compared Ms. Gross's check registry and found several checks whose amount did not match the amount recorded in the registry.  *See id*. at 244-45.  Detective Goodling examined the check register for checks written to Ellis and found several additional checks written in 2021 for which the register amount was lower than the amount of the check.  The total discrepancy in the value of the checks paid to Ms. Ellis amounted to $6,900; there were also two $600 checks that did not appear in the registry at all.  *See id*. at 247-252, 255-265.[4]

When Detective Goodling asked about the altered checks, Ellis initially denied altering them.  She then said she had changed the amounts because Ms. Gross was reimbursing her for prior purchases.  Detective Goodling also found checks listed in the check registry recorded as written to Ms. Gross's church, but actually cashed by Ellis.  Ellis could not explain that discrepancy.  *See id*. at 268-69.

During the jury trial, the Commonwealth amended the charges to reduce the amount of the theft from $14,320 to "greater than $2,000."  *See* N.T., at 291, 297.  The defense moved for a directed verdict.  *See* N.T., at 295.  The court denied the motion.

---

[4] The check register listed one check payable to Ellis's boyfriend, Jon Grove, for $100; it was actually written to Ellis for $600.  *See* N.T., at 255-53.

Ellis testified in her defense that Ms. Gross became bedridden in 2020, and Ellis did her cleaning, shopping, laundry, cooking, and errands. ***See id***. at 300-304. When Tome stopped writing checks for Ms. Gross's bills, Ellis assumed that responsibility but never signed the checks. ***See id***. at 305-07. Ellis testified that when Ms. Gross's Discover card reached its limit, she paid for Ms. Gross's expenses herself and kept a ledger recording the date and amounts of those payments, although she admitted she did not mention the ledger when she spoke to Detective Goodling. ***See id***. at 307-310, 344. Ellis asserted that by 2021, Ms. Gross owed her approximately $12,000. ***See id***. at 312-14. Ellis testified Ms. Gross periodically instructed her to alter the amount of checks written to Ellis to repay that debt and that Ellis altered checks to other payees at Ms. Gross's direction. ***See id***. at 315-19. Ellis testified that at the time her employment ended, Ms. Gross owed her nearly $14,000. ***See id***. at 326-29.

The jury found Ellis guilty of theft by deception of more than $2,000, but acquitted Ellis of forgery, theft by unlawful taking, and receiving stolen property. Ellis immediately moved for the court to set aside the verdict. The trial court directed Ellis to file a formal motion. When the parties appeared before the court in October 2022, defense counsel advised the court that its motion would not be timely until ***after*** sentencing. However, at the

sentencing hearing, the court declined to impose sentence and granted counsel's oral motion and overturned the verdict. **See** N.T., 11/30/22, at 2.[5]

The Commonwealth timely appealed. This Court reversed the trial court's order. It held the trial court prematurely granted judgment of acquittal, reinstated Ellis's convictions, and remanded for sentencing to be followed by any possible post-sentence motion. **See Commonwealth v. Ellis**, 305 A.3d 989 at *6 (Pa. Super. 2023) (unpublished memorandum).

In January 2024, the Commonwealth filed a motion for recusal. At the hearing on the motion, which was combined with the re-sentencing hearing, the court asked the Commonwealth to refer it to the evidence that established Ms. Tome, Ms. Gross's power of attorney, knew what moneys were being spent. **See** N.T., 1/25/24, at 8.[6] The Commonwealth asserted it proved theft by deception through Ellis's alteration of the checks, and the creation of a false impression by recording incorrect amounts in the check ledger. **See id**. at 8. When the court asked for proof of the victim's reliance on the deception in light of her death, the Commonwealth cited Ellis's misuse of the ledger and Ellis's practice of cashing of checks for higher amounts than the ledger

---

[5] The court recognized, *inter alia*, it could not make credibility determinations but noted Ellis's testimony that she made substantial loans to Ms. Gross was unrefuted and also stated there was no evidence the victim acted in reliance on Ellis's deception. **See id**. at 4-7.

[6] This Court is not aware of any law stating the Commonwealth cannot prove theft by deception without evidence a power of attorney reviewed how the accused spent the money at issue.

recorded. **See id**. at 12-14. The court then declared the "credibility issue" was whether Ellis's testimony was more credible than Detective Goodling's, and cited Ellis' testimony her credit card expenses exceeded the amount of the altered checks. **See id**. at 14-15. During that discussion, the court denied recusal. **See id**. at 15-16. The court then imposed a sentence of two years of reporting probation but declined to order restitution because "[E]llis produced substantial credit card statements showing expenses she paid on behalf of . . . [Ms. Gross] . . . [that were] actually in excess of the amount of restitution that's being requested." **See id**. at 18.

In February 2024, Ellis filed post-sentence motions for judgment of acquittal, and the Commonwealth filed post-sentence motions, including a motion for reconsideration of sentence seeking the imposition of restitution in the amount of $13,250 payable to Ms. Gross's estate, and a renewed recusal motion. On April 5, 2024, the court granted Ellis's motion for judgment of acquittal and denied the Commonwealth's restitution and recusal motions.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the court complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth presents the following three issues for our review:

> I.    Did the trial court err in overturning the jury's verdict where the Commonwealth presented evidence that was sufficient to prove . . . theft by deception where the Commonwealth proved that [Ellis] intentionally obtained money belonging to the victim by cashing checks at greater amounts than originally written, [Ellis] created a false impression of value by writing values in the victim's check receipt book

than were less than the money cashed and by altering checks that were signed by the victim, and t[hat] the amount taken was in excess of $2,000?

II. Did the trial court err in failing to impose restitution where such restitution was mandatory under 18 Pa.C.S.A. § 1106(a) and where the trial court did not impose restitution because the trial court believed that [Ellis] paid out-of-pocket expenses of the victim in excess of the requested restitution?

III. Did the trial court err in denying the Commonwealth's motion for recusal where the trial court has repeatedly made statements evidencing a bias in favor of [Ellis] and where the trial court has relied on its personal experience in caring for an elderly relative in rendering decisions?

Ellis's Brief at 5 (capitalization and citation form standardized).

The Commonwealth's first issue concerns the trial court's grant of Ellis's post-sentence motion challenging the sufficiency of the evidence of theft by deception.

A trial court may only grant post-sentence relief on sufficiency grounds when the evidence is **_legally insufficient_** to sustain the jury's verdict, not because it has a different view of a witness's credibility:

When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining the absence or presence of that quantum of evidence necessary to establish the elements of the crime. At this stage in the proceedings, **_the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility_**. . ..

**_Commonwealth v. Melechio_**, 658 A.2d 1385, 1387 (Pa. Super. 1995) (emphasis added, internal citation and quotation marks omitted). **_Accord Commonwealth v. Robinson_**, 33 A.3d 89, 94 (Pa. Super. 2011). **_See also Commonwealth v. Johnson_**, 631 A.2d 639, 643 n.2, 645 (Pa. Super. 1993)

(vacating trial court's grant of arrest of judgment based on the court's redetermination of credibility and re-evaluation of the evidence).

When reviewing the grant of a post-sentence arrest of judgment, the Court applies the standards that govern sufficiency challenges, does not re-weigh the evidence, and recognizes that in determining witness credibility, *the fact-finder is free to believe all, part, or none of the evidence*. *See Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa. Super. 2017) (emphasis added, citation omitted). *See also Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009). The jury was the finder of fact in the instant matter.

As factfinder, the jury found Ellis guilty of theft by deception. In so doing, the jury found Ellis intentionally obtained or withheld the property of another person by deception. Intentional deception is shown by, *inter alia*: (1) creating or reinforcing a false impression, (2) preventing another person from acquiring information which would affect her judgment of a transaction, or (3) failing to correct a false impression the deceiver previously created or reinforced. *See* 18 Pa.C.S.A. § 3922(a). Because intent is a subjective mental state that is difficult to prove directly, the law recognizes the prosecution may prove intent through direct or circumstantial evidence. Intent may be inferred from acts, conduct, or the attendant circumstances. *See Commonwealth v. Biesecker*, 161 A.3d 321, 329 (Pa. Super. 2017). *See also Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (recognizing the

Commonwealth may satisfy its burden through wholly circumstantial evidence).

The Commonwealth asserts the trial court erred in arresting Ellis's conviction from the jury. It contends the trial court usurped the jury's decision and improperly reweighed the evidence the jury -- the finder of fact here -- determined, and made an improper credibility determination when it declared Ellis credible and drew inferences in her favor, and considered irrelevant factors, including how Tome, Ms. Gross's power of attorney, should have acted. *See* Commonwealth's Brief at 24-34. The Commonwealth contends it presented sufficient evidence to establish Ellis's guilt of theft by deception including the facts that: (1) she obtained the victim's money, (2) Ms. Gross's check register, which Ellis maintained, in many cases recording a different amount than the corresponding cashed check, (3) the dollar amounts of numerous checks Ms. Gross paid to Ellis were altered to a higher amount, and (4) Ellis initially denied she altered the checks, then changed her story and later claimed she altered the checks at Ms. Gross's request. *See* Commonwealth's Brief at 28-30.

In its opinion, the trial court reluctantly reasoned the evidence sufficiently proved Ellis intentionally obtained Ms. Gross's property. *See* Trial

Court Opinion, 6/17/24, at 17.[7] The court found, however, that Ellis's credit card statements corroborated her testimony she loaned Ms. Gross money and "[i]n the absence of Ms. Gross, the testimony that [Ellis] was being reimbursed for purchases of Ms. Gross's necessities was essentially uncontroverted." **See id**. at 18-19.[8] The court also asserted the Commonwealth failed to prove Ms. Gross's detrimental reliance on the deception Ellis practiced. Again, the trial court credited Ellis's testimony she expended money on Ms. Gross's behalf, and then proceeded to fault Tome, Ms. Gross's power of attorney, for not keeping closer track of Ms. Gross's finances. **See id**. at 19-23.

Upon review of the entire record, the trial court erred as a matter of law by failing to apply the proper standard requiring it to view the evidence and all reasonable inferences in the light most favorable to the Commonwealth as verdict-winner. Ms. Gross's check registers during the time of Ellis's employment clearly established discrepancies for a number of checks written to Ellis in which the amount on the register was less than the amount for which

---

[7] The court stated although defendant wrote hundreds of checks for Ms. Gross, "only certain checks had a discrepancy between the check register and the check as actually written," and "the [c]ourt finds it important to note that at the beginning of [trial], Affiant still had the check register sitting on her desk and . . . it had not been provided to the [d]efense for their review." Trial Court Opinion, 6/17/24, at 17.

[8] The court's determination that Ellis's testimony and credit card statements, in the absence of the testimony of the deceased victim, established her innocence constituted a credibility determination and a reweighing of the facts already considered by the jury as the exclusive finder of facts.

the check was cashed.  Ellis claimed as she wrote these checks, the victim stopped her each time **after** she had written the numeric portion of the check but **before** she had written the amount due in words and told Ellis she wanted to pay back some of the money she owed Ellis.  Ellis's repeated practice of mis-recording the amount of the check in Ms. Gross's check register, the amount of checks written to her, and changing the numeric dollar amounts of checks, certainly met the statutory requirements of creating or reinforcing a false impression, preventing another person from acquiring information which would affect her judgment of a transaction, or failing to correct a false impression the deceiver previously created or reinforced.  **See** 18 Pa.C.S.A. § 3922.  Because the evidence and the reasonable inferences from that evidence were sufficient to establish the elements of theft by deception, the trial court erred by usurping the jury's verdict and granting Ellis's motion for arrest of judgment.  **See Fitzpatrick**, 159 A.3d at 567; **Commonwealth v. Marquez**, 980 A.2d at 148.  **See also Commonwealth v. Quel**, 27 A.3d 1033, 1042 (Pa. Super. 2011) (finding the creation of deceptive records of financial transactions supported conviction of theft by deception).[9]

_____

[9] The trial court asserts the Commonwealth failed to prove Ms. Gross's detrimental reliance on Ellis's deception.  **See** Trial Court Opinion, 6/17/24, at 19 (emphasis in original) (stating that "[b]ased on the record, this [c]ourt cannot find that there was any evidence presented . . . that there was a deception . . ., nor was there any evidence that supported that Ms. Gross **relied on that deception**); **id**. at 21 (stating that "[n]one of the Commonwealth's witnesses had any personal knowledge to determine what
*(Footnote Continued Next Page)*

The trial court also impermissibly usurped the jury's fact-finding function. The jury was free to infer, and apparently did, that Ellis's account was false and she had the victim sign the checks on which the numeric amount had been completed, then altered that amount and wrote the words spelling out the altered amount without the victim's agreement or knowledge. The trial court thus violated the applicable standard of review and reweighed the jury's credibility determinations based on the evidence put forth at trial. *See Melechio*, 658 A.2d at 1387; *Johnson*, 631 A.2d at 643 n.2, 645 (Pa. Super. 1993).[10]

The Commonwealth's second issue asserts the trial court erred by failing to impose mandatory restitution by imposing no restitution.

The sentencing statute governing restitution for injuries to person or property provides that an offender shall be sentenced to restitution for any

_____

Ms. Gross may or may not have relied on," and therefore proof of "all other elements" of the statute is "immaterial[.]" Upon review of the statutory language, nowhere does the crime of Theft by Deception require proof of detrimental reliance. We decline to add the element of detrimental reliance to the theft by deception statute. *See* 18 Pa.C.S.A. § 3922(a).

[10] The trial court's contention Ellis's testimony was "essentially uncontradicted" ignores the evidence Ellis altered a series of checks written to her and made false entries in Ms. Gross's check register, which created a false impression and prevented another person from acquiring information with which to assess a transaction. *See* 18 Pa.C.S.A. § 3922(a)(1)-(2). A jury is free to believe all, part, or none of a witness's testimony, *see Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011), and through its verdict rejected Ellis's account. We also note the trial court's condemnation of Ms. Gross's power of attorney's conduct has no place in a sufficiency review.

crime where property of a victim has been stolen or otherwise unlawfully obtained. *See* 18 Pa.C.S.A. § 1106(a)(1). *See also Commonwealth v. Rapp*, 331 A.3d 17, 24 (Pa. Super. 2025 (internal citation omitted) (stating "[t]he plain language of Section 1106 makes clear . . . that a sentencing court is required to impose restitution . . . when a victim's property has been 'substantially decreased' as a direct result of the crime"). The subsection of the statute entitled "**Mandatory Restitution**" provides the court "***shall*** order full restitution . . . so as to provide the victim with the fullest compensation for the loss." 18 Pa.C.S.A. § 1106(c)(1) (emphasis added). A court's failure to impose restitution where the circumstances described in Section 1106(a)(1) are established results in an illegal sentence. *See Commonwealth v. Weir*, 239 A.3d 25, 37 (Pa. 2020). Section 1106(a) "supplants a court's traditional authority to exercise discretion in choosing sentencing alternatives" and "lends itself to a binary analysis, i.e., ether it applies or does not apply depending on whether the factual prerequisites for imposition of the sentence exist[.]" *See id*.

The Commonwealth asserts restitution was mandatory, given Ellis's conviction, and asserts it established the amount of restitution at the sentencing hearing: $13,250. The Commonwealth argues the statute requires compensation in the full amount of the victim's loss, *see* 18 Pa.C.S.A. § 1106(c)(1)(i), and the court improperly considered Ellis's alleged out-of-

pocket payments on the victim's behalf. *See* Commonwealth's Brief at 35-38.

The trial court states the restitution statute affords it the discretion to consider the extent of the injury the victim suffered, Ellis's testimony establishes she paid more than $13,477.53 for the victim's expenses, and therefore no restitution is due. *See* Trial Court Opinion, 6/17/24, at 23-27. The trial court quotes a passage in which the *Weir* Court states, in considering whether a challenge to a restitution award implicates the discretion aspects or the legality of sentence:

> [T]he discretionary nature of the amount of restitution is established in Section 1106(c)(2), which sets forth the factors to be considered by the sentencing court in fashioning an award of restitution: 'the court shall consider the extent of the injury suffered by the victim . . . and such other matters as it deems appropriate.' 18 Pa.C.S.A. § 1106(c)(2)(i). This language, placing the determination of the amount of restitution under the sentencing court's consideration based on the stated factors and 'other matters it deems appropriate,' is the clearest possible indication of the General Assembly's recognition that fashioning the restitution order remain[s] in the exercise of the sentencing court's discretion.

*See* Trial Court Opinion, 6/17/24, at 25, quoting *Weir*, 239 A.3d at 38.

We have searched for, but were unable to find, any law in which a jury convicted a defendant of a theft crime with a specified minimum amount of money stolen,[11] and the court refused to award any restitution. Though a trial

_____

[11] Although the Commonwealth asserts the amount of the theft was $13,250, it amended the information at trial downward to state that Ellis stole an
*(Footnote Continued Next Page)*

- 15 -

court has discretion to determine restitution, that discretion is not unbounded and does not extend the authority to the level of refusal to award restitution of at least the minimum amount that supported Ellis's jury conviction -- here more than $2,000. The trial court's restitution award of $0 is therefore an illegal sentence. Accordingly, we vacate the court's restitution order and remand for a new sentencing hearing. ***See Weir***, 239 A.3d at 37.

The Commonwealth's final issue implicates the trial court's denial of its motion for recusal.

The standards governing recusal are as follows:

> It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice[,] or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner . . . . The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

---

amount "greater than "$2,000." ***See*** N.T., 291. The jury was not presented with a special interrogatory permitting it to state the precise amount of the theft. ***See*** N.T. at 438-39.

*Commonwealth v. White*, 910 A.2d 648, 657 (Pa. 2006). *See In re Cumberland County District Attorney's Office*, 330 A.3d 471, 480 (Pa. Super. 2025) (*per curiam*) (recognizing a jurist's decision will be overturned only for an abuse of discretion and that "our judges are honorable, fair, and competent").

The Commonwealth asserts the appearance of impropriety is sufficient to warrant recusal, the lower court indicated a bias in Ellis's favor by granting her post-sentence motion (having already attempted to reverse the conviction) and declining to grant restitution, and the lower court improperly reweighed the evidence in Ellis's favor and considered allegedly deficient conduct by the victim's power of attorney. *See* Commonwealth's Brief at 39-51.

The trial court suggests the Commonwealth may not maintain its claim because it failed to raise it "at the earliest possible moment." *See* Trial Court Opinion, 6/17/24, at 27-29, citing *inter alia*, *Lomas v. Kravitz*, 170 A.3d 380, 387 (Pa. 2017). It notes the Commonwealth's 2024 recusal motion cites comments the court made in 2022. *See* Trial Court Opinion, 6/17/24, at 27-28. The court further states a court's ruling against a party is not itself proof of bias, and a court's determination of its own potential bias is personal and unreviewable. *See id*. at 29-30. It determines its recusal was not required.

Given the discretion the law accords a trial court to determine it can dispose of a case fairly and without prejudice, we find the Commonwealth has

failed to establish the trial court abused its discretion by denying recusal. We trust the trial court will abide by our rulings in this case and apply them on this second remand from this court. *See Cumberland County District Attorney's Office*, 330 A.3d at 480.

Order granting post-sentence relief vacated, judgment of sentence vacated, denial of recusal affirmed, case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/14/2025