J-A22043-25 and J-A22044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARY BUSH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAMERON ADAMS AND LAUREN | : | No. 1271 EDA 2024 |
| ADAMS, JOSEPH BUSH, ALEXANDER | : | |
| CHOTKOWSKI, KELLER WILLIAMS, | : | |
| AND JAMES WAGNER, LAND | : | |
| SERVICES, USA, INC. | : | |

Appeal from the Order Entered April 3, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2021-05273-RC

| | | |
|---|---|---|
| MARY BUSH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAMERON ADAMS AND LAUREN | : | No. 2664 EDA 2024 |
| ADAMS, JOSEPH BUSH, ALEXANDER | : | |
| CHOTKOWSKI, KELLER WILLIAMS, | : | |
| AND JAMES WAGNER, LAND | : | |
| SERVICES, USA, INC. | : | |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2021-05273-RC

BEFORE:   LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 10, 2025**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant Mary Bush appeals the order entered by the Court of Common Pleas of Chester County on April 3, 2024 finding Appellant in contempt of its previous order entered September 8, 2021.  Appellant also appeals the trial court's September 5, 2024 order which awarded (1) contempt sanctions in the form of attorneys' fees that Appellees Cameron and Lauren Adams incurred in filing the contempt motion that was granted on April 3, 2024 as well as (2) attorneys' fees as directed by this Court in *Bush v. Adams*, 718 EDA 2022, 2023 WL 2379026 (Pa.Super. March 7, 2023) (unpublished memorandum). We have consolidated the appeals for review.

This litigation involves Appellant's incessant efforts to submit *pro se* legal filings to attempt to gain ownership of the real property located at 1628 Glenside Road, West Chester, Pennsylvania ("Property"), which once belonged to Appellant's mother, Genevieve Bush, who passed away in June 2021.  The basis of Appellant's repetitive legal actions is her claim that she is the true owner of the Property and the personalty contained therein, but has been deprived of her legal interest due to the fraudulent actions of multiple parties.

Appellant has related filings in the orphans' court at docket No. 1509-1720, which have been made part of the record in this case, which was filed in the civil division of the Court of Common Pleas.  In June 2011, Genevieve Bush was adjudicated incapacitated due to cognitive impairment. The orphans' court appointed Joseph Bush (Genevieve's son and Appellant's brother) as the guardian of Genevieve's estate.  On October 3, 2019, Joseph Bush filed a

petition for leave to sell the Property to obtain funds to support Genevieve's nursing home care. Joseph Bush also asked that Appellant be enjoined from interfering with the sale of the Property, as there had been multiple instances in which Appellant had hindered his efforts to maintain the Property and refused to leave the premises.

On November 8, 2019, the orphans' court judge, the Honorable Katherine Platt, granted Joseph Bush permission to sell the Property. To facilitate the sale, Judge Platt specifically prohibited Appellant from coming within fifty yards of the Property line or interfering with, confronting, speaking to, harassing, recording, or photographing any persons on the Property.[1]

On December 23, 2019, Appellees entered into an agreement of sale to purchase the Property. On February 19, 2020, Judge Platt entered an order striking a *lis pendens* Appellant had placed against the Property and permitted the sale to close.[2] Judge Platt emphasized that she found that "the purpose of [Appellant's *lis pendens*] filing was to prevent the Guardian from selling

---

[1] Judge Platt directed Appellant to provide Joseph Bush with a list of personal items that she believed remained on the Property within thirty days; Judge Platt directed Joseph Bush to identify and deliver such items to Appellant and inventory the rest of the personal property for future reporting. All such personalty was returned on March 3, 2020.

[2] Our Supreme Court has clarified that: "[t]he effect of a *lis pendens* is not to establish actual liens upon the properties affected nor has it any application as between the parties to the action themselves; all that it does is to give notice to third persons that any interest they may acquire in the properties pending the litigation will be subject to the result of the action." **Kohl v. PNC Bank Nat. Ass'n**, 590 Pa. 151, 159, 912 A.2d 237, 242 (2006) (quoting **Dice v. Bender**, 383 Pa. 94, 117 A.2d 725, 726–27 (1955)).

Genevieve Bush's house, not to assert a genuine title interest. The property belongs, unequivocally, to Genevieve Bush, and the proceeds of the sale are necessary to fund her continued care." Order, 2/19/20, at 2.

After Genevieve's death in June 2021, Appellant continued her use of the legal process by initiating the instant litigation in the civil division of the Court of Common Pleas, claiming Appellees, along with Joseph Bush, Alexander Chotkowski, Esq., Keller Williams, James Wagner, and Land Services, USA, Inc. ("Land Services"), fraudulently conspired to deprive her of her interest in the Property.[3] Appellees, Joseph Bush, Atty. Chotkowski, and Land Services filed motions to dismiss the action as frivolous *pro se* litigation pursuant to Pa.R.C.P. 233.1.[4] Keller Williams and Wagner filed preliminary objections challenging the legal sufficiency of the complaint.

_____

[3] Attorney Chotkowski represented Joseph Bush and his brother, Michael Bush, in the orphans' court. James Wagner of Keller Williams and Land Services were the realtor and title company involved in the sale of the Property.

[4] Rule 233.1 provides in pertinent part:

**Rule 233.1. Frivolous Litigation. Pro Se Plaintiff. Motion to Dismiss**

(a) Upon the commencement of any action filed by a *pro se* plaintiff in the court of common pleas, a defendant may file a motion to dismiss the action on the basis that

(1) the *pro se* plaintiff is alleging the same or related claims which the *pro se* plaintiff raised in a prior action against the same or related defendants, and

(2) these claims have already been resolved pursuant to a written settlement agreement or a court proceeding.

*(Footnote Continued Next Page)*

The trial court judge, the Honorable Edward Griffith, issued numerous orders granting each Rule 233.1 motion as well as the preliminary objections filed by Keller Williams and Wagner. In particular, Judge Griffith entered an order on September 8, 2021, which granted Appellees' petition to dismiss Appellant's complaint against them pursuant to Rule 233.1, struck yet another *lis pendens* Appellant placed on the Property during the within litigation, enjoined Appellant from filing any additional *pro se* litigation against Appellees to challenge their title to the Property, and warned Appellant that her failure to comply with this order may result in sanctions.[5]

On December 16, 2021, Judge Griffth entered an order dismissing the final defendant from this lawsuit and enjoining Appellant from filing any additional *pro se* litigation regarding challenges to the title of the Property or any personal property located there without leave of court.

On March 7, 2023, this Court affirmed Judge Griffith's decision to dismiss Appellant's complaint alleging that Appellees had fraudulently conspired to deprive her of her interest in the Property. **Bush v. Adams**, 718 EDA 2022

---

(b) The court may stay the action while the motion is pending.

(c) Upon granting the motion and dismissing the action, the court may bar the *pro se* plaintiff from pursuing additional *pro se* litigation against the same or related defendants raising the same or related claims without leave of court. …

Pa.R.C.P. 233.1.

[5] On October 3, 2021, Appellant filed a motion seeking Judge Griffith's recusal and the invalidation of his prior orders. Judge Griffith denied the recusal motion on October 12, 2021.

(Pa.Super. March 7, 2023) (unpublished memorandum).  This Court reiterated that Appellant had a full opportunity to litigate her challenge to the title to the Property before the orphans' court, which allowed the sale of the Property to go forward as Appellant had not demonstrated a title interest in the Property.

This Court agreed that Appellant's complaint against Appellees was another example of Appellant's continuous, unjustified refusal to accept the orphans' court ruling as Appellant had also filed multiple unsuccessful actions in state and federal court to challenge the title of the Property.  As such, this Court upheld the trial court's ruling that Appellant violated Rule 233.1 by "repeatedly filing new litigation raising the same claims against the same defendant[s] even though [her] claims ha[d] been previously adjudicated either through settlement or through court proceedings."  *Id.* at *6 (quoting Rule 233.1, cmt).

Given Appellant's habitual insistence on raising previously litigated claims that were determined to be meritless, this Court found it was appropriate for the trial court to enjoin Appellant from filing subsequent litigation to challenge the title of the Property or the personalty contained within.  Further, this Court ordered Appellant to pay all Appellees attorneys' fees pursuant to Pa.R.A.P. 2744, which permits the imposition of sanctions to deter a party from filing similar frivolous and vexatious litigation in the future.[6]

---

[6] **See** Pa.R.A.P. 2744 ("an appellate court may award as further costs damages as may be just ... if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious").

Accordingly, this Court remanded the case to the trial court for a hearing on the sole and exclusive question of the assessment of counsel fees.

The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on December 19, 2023 and denied her request for reconsideration on February 7, 2024. After the case was remanded, the trial court scheduled a hearing to be held on May 20, 2024, to calculate attorneys' fees to be imposed consistent with this Court's March 7, 2023 decision.

Just days after Appellant was denied relief by the Supreme Court, on February 14, 2024, Appellant filed a "Petition for the Return of Property and to Reopen a Full Accounting of the Genevieve Bush Revocable Trust" (hereinafter the "Petition for Return of Property") in the orphans' court division of the Court of Common Pleas at docket 1521-1429, in which Appellant has filed a challenge to the administration of Genevieve Bush's estate.

In the Petition for Return of Property, Appellant directed the orphans' court to find the transfer of the title of the Property to Appellees was "null and void." Petition for the Return of Property, at 20. Appellant requested that the orphans' court "enter an Order that Cameron and Lauren Adams are to surrender the keys to the 1628 Glenside Road, West Chester 19380 real property UPI 50-5-149.1 to Mary Bush immediately" and that Appellees return personal property to Bush. *Id.*

On March 7, 2024, Appellees filed a motion for contempt and sanctions ("contempt motion") in civil court, arguing that Appellant's Petition for Return

of Property filed in the orphans' court violated Judge Griffith's order entered on September 8, 2021 (hereinafter "Rule 233.1 order"), which prohibited Appellant from filing subsequent legal challenges to Appellees' title to the Property or ownership of the personalty contained therein. On March 18, 2024, Appellant attempted to file preliminary objections to the contempt motion. On April 2, 2024, the Honorable Anthony T. Verwey[7] overruled the preliminary objections, noting that preliminary objections cannot be filed in response to a motion, which is not a pleading.

On April 3, 2024, Judge Verwey entered an order finding Appellant in contempt of the Rule 233.1 order and determining that Appellant "shall pay [] Cameron and Lauren Adams[] their reasonable counsel fees incurred in prosecuting the within motion." Order, 4/3/24, at 1. Judge Verwey indicated that the attorneys' fees associated with the contempt motion would be set at a hearing on May 20, 2024, at which the trial court was already set to calculate attorneys' fees pursuant to this Court's March 7, 2023 decision. The April 3, 2024 order also directed the Prothonotary, Recorder of Deeds, and clerk of the Orphans' Court of Chester County not to accept any filing from Appellant that challenged Appellees' title to the Property without prior Court approval.

On April 28, 2024, Appellant filed a motion seeking Judge Verwey's recusal and to void his prior orders entered in this case. On May 28, 2024, Judge Verwey entered an order denying Appellant's recusal motion.

_____

[7] This case was reassigned to Judge Verwey in February 2023 following the death of Judge Griffith. *See* Order, 5/28/24, at 2.

In the meantime, on May 1, 2024, Appellant filed an appeal from the trial court's April 3, 2024 contempt order; this appeal was docketed at 1271 EDA 2024.[8] Upon the filing of this appeal, the trial court expressed uncertainty as to whether it should stay its proceedings and continued the May 20, 2024 hearing scheduled to impose contempt sanctions as well as counsel fees pursuant to this Court's decision in 718 EDA 2022.

Ultimately, on September 4, 2024, Judge Verwey held a hearing to assess the attorneys' fees due to Appellees in both instances.[9]  In a single order entered September 5, 2024, Judge Verwey awarded Appellees (1) $28,655.57 in counsel fees pursuant to this Court's remand directive in 718 EDA 2022 and (2) $17,035.00 in counsel fees as a contempt sanction for Appellant's violation of the Rule 233.1 order.

On October 4, 2024, Appellant filed an appeal from the trial court's September 5, 2024 order; this appeal was docketed at 2664 EDA 2024.  In this appeal, Appellant challenges both awards of counsel fees.  Appellant complied with the trial court's directive that Appellant file a concise statement

_____

[8] On May 1, 2024, Appellant also attempted to file a separate appeal of the trial court's order dismissing her preliminary objections to the contempt motion; this appeal was docketed at 1270 EDA 2024.  On May 29, 2024, this Court issued a rule to show cause, directing Appellant to show why the appeal should not be quashed given that orders overruling preliminary objections are generally unappealable, interlocutory orders.  *See, e.g., TTSP Corp. v. Rose Corp.*, 217 A.3d 1269, 1277 (Pa.Super. 2019).  On July 12, 2024, this Court quashed the appeal at 1270 EDA 2024 as interlocutory and not appealable.
[9] Although this Court previously determined that all defendants in this action were entitled to attorneys' fees, Appellees were the only defendants that pursued the award at the September 4, 2024 hearing on attorneys' fees.

of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Thereafter, Appellant filed a motion to consolidate the appeals at 1271 EDA 2024 and 2664 EDA 2024, which this Court granted on October 7, 2025.

As a preliminary matter, we must determine whether the appeals are properly before this Court. As noted above, Appellant's appeal at 1271 EDA 2024 challenges the trial court's April 3, 2024 order which found Appellant in contempt and found Appellees were entitled to counsel fees as a sanction. The order, however, noted that the amount of counsel fees would be determined at a subsequent hearing.

We recognize that "[a] contempt order is final and appealable if the order contains (1) a present finding of contempt and (2) an imposition of sanctions." **Fetzer v. Fetzer**, 336 A.3d 1058, 1063 (Pa.Super. 2025) (quoting **Hanbicki v. Leader**, 294 A.3d 1234, 1239 (Pa.Super. 2023)). For a contempt order to be appealable, "it is only necessary that the order impose sanctions on the alleged contemnor, and that no further court order be required before the sanctions take effect." **Foulk v. Foulk**, 789 A.2d 254, 258 (Pa.Super. 2001) (*en banc*). Here, the April 3, 2024 order contains a present finding of contempt, but contemplated subsequent proceedings to set the sanction amount. Because a further court order was required before the any sanction took effect, the April 3, 2024 contempt order was not appealable.

However, while the appeal of the April 3, 2024 contempt order was still pending, the trial court proceeded with the September 4, 2024 sanctions

hearing, which was permissible. *See Dovin v. Honey Brook Golf Club L.P.*, 325 A.3d 1282, 1289-90 (Pa.Super. 2024) ("[A] trial court may proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order") (citing Pa.R.A.P. 1701(b)(6)). The trial court's subsequent order on September 5, 2024 awarded attorneys' fees as a contempt sanction against Appellant pursuant to the trial court's April 3, 2024 order.

Accordingly, although we quash the appeal at 1271 EDA 2024 which challenged the trial court's interlocutory contempt order entered on April 3, 2024,[10] Appellant's timely appeal of the September 5, 2024 order which imposed contempt sanctions allows this Court to review the trial court's finding of contempt within the appeal at 2664 EDA 2024. This Court has held that "[a]s a general rule, interlocutory orders that are not subject to immediate appeal as of right may be reviewed on a subsequent timely appeal of the final appealable order or judgment in the case." *Stephens v. Messick*, 799 A.2d 793, 798 (Pa.Super. 2002) (citing *Triffin v. Janssen*, 688 A.2d 1212

_____

[10] We note that the trial court's April 3, 2024 order also directed the Prothonotary, Recorder of Deeds, and clerk of the Orphans' Court of Chester County not to accept any filing from Appellant that challenged Appellees' title to the Property without prior Court approval. We recognize that an order granting an injunction is appealable as of right pursuant to Pa.R.A.P. 311(a)(4). However, we do not find that this language rendered the April 3, 2024 order to be appealable as it merely reiterated the existence of the filing injunction that had been originally granted in the trial court's Rule 233.1 order filed on September 8, 2021.

(Pa.Super. 1997) (interlocutory order that was not immediately appealable as of right was reviewable on appeal after a final judgment)).

We also may review the portion of the September 5, 2024 order that awarded Appellees counsel fees pursuant to this Court's prior decision in 718 EDA 2022, in which we remanded for a hearing on the sole question of the assessment of attorneys' fees imposed pursuant to Pa.R.A.P. 2744. ***See Carmen Enters., Inc. v. Murpenter, LLC***, 185 A.3d 380, 388–89 (Pa.Super. 2018) (holding that order entered on remand awarding attorney's fees was final, appealable order because this Court remanded to trial court for determination of reasonable fee and, once fee issue decided, there were no other issues left to resolve).

In attempting to identify the issues Appellant wishes to raise on appeal, we note that Appellant's brief fails to comply with our rules of appellate procedure. Rule 2116 provides that "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail." Pa.R.A.P. 2116. Appellant's brief sets forth a statement of questions involved which spans twenty-four pages and intersperses her issues for review along with argument and allegations. While our courts disfavor lengthy statements of the questions involved under Rule 2116, we decline to find Appellant's issues to be waived as her lengthy statement does not impede our appellate review.

We first review Appellant's claims with respect to the imposition of attorneys' fees under Pa.R.A.P. 2744. As noted above, this Court directed the trial court to impose reasonable counsel fees under Rule 2744 in connection with Appellant's filing of frivolous *pro* se litigation in civil court to prevent the transfer of the Property to Appellees, an issue which had been already been resolved in separate proceedings before the orphans' court.

Appellant claims that the trial court should not have imposed counsel fees in this instance as Appellant presented new evidence in the orphans' court in her Petition for Return of Property to show that "Appellees only obtained a colorable title to the [Property] that have [sic] been fraudulently procured from [Genevieve Bush] and Appellant." Appellant's Brief, at 8-10, 32.[11]

Appellant yet again attempts to reopen her claim of ownership to the Property which has been repeatedly held to be meritless by numerous state and federal courts. As noted above, this Court has specifically determined that this particular issue has been fully and finally litigated before the orphans' court, which allowed the sale of the Property to Appellees to go forward given that Appellant had not demonstrated a title interest in the Property.

Appellant may not attack the validity of this Court's decision in the prior appeal to affirm the trial court's finding that Appellant's litigation in civil court

---

[11] Appellant also claims the orphans' court has not fully litigated her claims against Genevieve Bush's estate involving issues of fiduciary misconduct and conversion. Appellant's allegations regarding the administration of the estate are not properly before this Court in the instant matter, which solely focused on Appellant's challenge to Appellees' title to the Property.

to challenge the transfer of the Property constituted frivolous *pro se* litigation that warranted an award of counsel fees to Appellees under Rule 2744. The sole issue upon remand was this Court's direction for the trial court to calculate reasonable counsel fees due to Appellees as a result of Appellant's Rule 2744 violation.

To the extent that Appellant claims that the trial court imposed unreasonable counsel fees for her Rule 2744 violation, we find that the trial court properly exercised its discretion in imposing such fees. "Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." ***Garced v. United Cerebral Palsy of Philadelphia & Vicinity***, 307 A.3d 103, 127 (Pa.Super. 2023) (quoting ***Thunberg v. Strause***, 545 Pa. 607, 614–15, 682 A.2d 295, 299 (1996)).

In this case, the trial court held a day-long hearing on the calculation of attorneys' fees during which Appellees' counsel provided extensive documentation of the legal bills Appellees incurred in defending themselves from Appellant's challenge to their ownership of the Property in the 2018 *pro se* litigation filed in civil court before Judge Griffith.[12] Appellees' counsel

_____

[12] Although the trial court indicates that Appellant did not provide it with the transcript of the September 4, 2024 hearing on contempt sanctions, Appellant includes a copy of the transcript of this hearing in her reproduced record. Appellees do not dispute its accuracy as they cite to the copy of the transcript in Appellant's reproduced record. Further, the trial court nevertheless analyzes the merits of Appellant's challenge to the contempt sanctions and
*(Footnote Continued Next Page)*

presented meticulous invoices that contained specific detail as to the particular professional services provided. Appellant was given ample opportunity and wide latitude to conduct cross-examination during this extended hearing. Given that Appellant has not offered any support or analysis to challenge the reasonableness of the fees claimed by Appellees, we see no reason to disturb the trial court's discretion in awarding Appellees $28,655.57 in counsel fees pursuant to this Court's remand directive in 718 EDA 2022.

Appellant also asserts that Judge Verwey erred in finding her in contempt of Judge Griffith's Rule 233.1 order entered on September 8, 2021. "As each court is the exclusive judge of contempts against its process, we will reverse an order of contempt only upon a showing of a plain abuse of discretion." *In re Contempt of Cullen*, 849 A.2d 1207, 1210 (Pa.Super. 2004) (quoting *Diamond v. Diamond,* 792 A.2d 597, 600 (Pa.Super. 2002)).

We begin by distinguishing civil contempt from criminal contempt:

> The determination of whether a particular order contemplates civil or criminal contempt is crucial, as each classification confers different and distinct procedural rights on the defendant. *Kramer*

---

concludes that Appellant is not entitled to relief. Our rules of appellate procedure allow us to consider a transcript that is included in reproduced record and not in the certified record, if neither party disputes its accuracy. *See* Pa.R.A.P. 1921, cmt. (citing *Commonwealth v. Brown*, 617 Pa. 107, 52 A.3d 1139, 1145 n.4 (2012) (considering written guilty plea colloquy in contained only in reproduced record given the accuracy of the reproduction had not been disputed); *Prieto Corp. v. Gambone Constr. Co.,* 100 A.3d 602, 605 n.2 (Pa.Super. 2014) (declining to find waiver based on the appellant's failure to include trial transcript in certified record when a copy of the trial transcript was made part of the reproduced record and neither party had disputed its accuracy).

> *v. Kelly*, 265 Pa.Super. 58, 401 A.2d 799, 801 (1979). There is nothing inherent to a contemptuous act or refusal to act which classifies the act itself as "criminal" or "civil." ***Diamond v. Diamond***, 715 A.2d 1190, 1194 (Pa.Super. 1998). The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. ***Id****.* These judicial responses are classified according to the dominant purpose of the court. ***Id****.* If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. ***Knaus v. Knaus***, 387 Pa. 370, 376, 127 A.2d 669, 672 (1956). But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. ***Id****.* at 377, 127 A.2d at 672. The purpose of a civil contempt proceeding is remedial. ***Id****.* Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained. ***Id****.*

***Lachat v. Hinchcliffe***, 769 A.2d 481, 487–88 (Pa.Super. 2001).

In this case, as trial court's dominant purpose was to direct Appellant to comply with the Rule 233.1 order, the trial court adjudicated Appellant to be in civil contempt. As a result, we are guided by the following principles:

> ... In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by preponderance of the evidence, that the defendant is in noncompliance with a court order. However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.
>
> To be punished for contempt, a party must not only have violated a court order, but that order must have been "*definite, clear, and specific* -leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such

- 16 -

cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

When holding a person in civil contempt, the court must undertake (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt....

*Lachat v. Hinchliffe*, 769 A.2d 481, 488–89 (Pa.Super. 2001) (citations omitted) (emphasis in original). "Fulfillment of all five factors is not mandated, however." *Wood v. Geisenhemer–Shaulis*, 827 A.2d 1204, 1208 (Pa.Super. 2003). "[T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." *Schnabel Assoc., Inc. v. Bldg. and Const. Trades Council*, 338 Pa.Super. 376, 487 A.2d 1327, 1334 (1985) (emphasis added).

*In re Contempt of Cullen*, 849 A.2d 1207, 1210–11 (Pa.Super. 2004) (footnote omitted).

First, Appellant argues that Judge Verwey had no jurisdiction to enter the contempt order in the civil division of the trial court based on her Petition for Return of Property, which was filed in the orphans' court. Appellant claims the trial court improperly exercised jurisdiction over the estate of Genevieve Bush and improperly "transferred the case from the Orphan's Court to the Civil Court docket." Appellant's Brief, at 37. We disagree.

It is well established that:

there can be no question that courts have inherent power to enforce compliance with their lawful orders through civil

- 17 -

> contempt, which has long been recognized as the appropriate means by which a court may compel compliance with its orders. This inherent power dates back centuries, and it is embodied in our Judicial Code.

*Cnty. of Fulton v. Sec'y of Commonwealth*, 292 A.3d 974, 1003 (Pa. 2023) (citing *In re Investigating Grand Jury of Philadelphia*, 495 Pa. 186, 433 A.2d 5 (1981)).

In imposing the contempt sanctions in this case, the trial court was not exercising jurisdiction over estate matters, but merely employing the civil contempt process to enforce the terms of its Rule 233.1 order which clearly and unambiguously prohibited Appellant from challenging Appellees' title to the Property in any subsequent litigation without prior court approval. Appellant's Petition for Return of Property filed on February 14, 2024 violates the Rule 233.1 order as it directs the orphans' court to find the transfer of the Property to Appellees to be "null and void" and require Appellees to "surrender" the Property to Appellant.

In addition to using the contempt process to direct Appellant to comply with the Rule 233.1 order, the trial court was permitted to impose sanctions to compensate Appellees for losses they sustained in incurring legal fees to defend themselves against Appellant's challenge to their title in the Property after she was previously ordered to refrain from doing so. Accordingly, Judge Verwey exercised his authority as the exclusive judge of contempts against the process of the civil division of the Court of Common Pleas.

Second, Appellant asserts that Judge Verwey could not find her in contempt of the Rule 233.1 order without first holding a hearing at which she had the opportunity to be heard. Although the trial court did not hold a formal hearing and did not strictly follow the procedure for finding civil contempt, such a hearing was not required as the essential due process requisites (notice and an opportunity to be heard) were met. Appellant had notice of the Rule 233.1 order which directed her to refrain from filing any additional litigation to challenge Appellees' title to the Property or face sanctions. After Appellees filed a petition for contempt alleging Appellant had violated the Rule 233.1 order, she filed preliminary objections to voice her opposition. Although the trial court informed Appellant that she could not file preliminary objections to a contempt petition, it nevertheless overruled her objections.

The record shows Appellant's clear intent to violate the Rule 233.1 order as her Petition for Return of Property was filed mere days after she was denied relief by the Supreme Court of Pennsylvania in the instant litigation challenging Appellees' title to the Property. The certified record before Judge Verwey contained ample evidence to support his decision to hold Appellant in contempt of the Rule 233.1 order. Further, the trial court held a day-long hearing in which Appellees set forth detailed invoices to document the legal fees they incurred in defending themselves against the Petition for Return of Property. Appellant does not challenge the reasonableness of the counsel fees

imposed after an extensive hearing. As a result, we find no abuse of discretion in the contempt order and resulting sanctions.

In her remaining claims, Appellant asserts that the trial court failed to address "multiple conflicts of interest" and ethical concerns. First, Appellant alleges that Appellees' attorney, David L. Black, Esq., is a member of the law firm that previously represented Genevieve Bush and her estate, a claim which Appellees dispute. Appellant contends that a conflict of interest exists as Appellees are directly adverse parties to the estate given that Appellant accused Appellees of "depleting the Estate." We note that Appellant did not raise this issue for review in her court-ordered Rule 1925(b) statement. "Any issues not raised in a 1925(b) statement will be deemed waived." *In re Est. of Tomcik*, 286 A.3d 748, 757 (Pa.Super. 2022) (citation omitted). As Appellant failed to preserve this issue for review in her 1925(b) statement, it is waived.[13]

_____

[13] Even if Appellant had properly preserved this issue for review on appeal, she would not be entitled to relief. We agree with Appellees' response that Appellant is attempting to create a conflict that does not exist. Regardless of whether Attorney Black's firm previously represented the Estate, the Estate does not have adverse interests to Appellees. There is no basis to Appellant's claim that Appellees should be held liable for depleting the Estate, when our courts have repeatedly held that the Property was lawfully sold to the Appellees by Genevieve's son as guardian of her estate during her life to provide funds to pay for Genevieve's nursing home care. The only party that has an adverse interest to Appellees in this litigation is Appellant. Further, Appellant cannot use the Pennsylvania Rules of Professional Conduct as a procedural weapon to seek the dismissal of claims against her. *See* Pa.R.Prof.C. Preamble and Scope (providing that the Rules of Professional Conduct "can be subverted when they are invoked by opposing parties as procedural weapons").

Appellant also claims Judge Verwey erred in denying her motion for recusal. We note that "[a] jurist's decision on a recusal motion will be overturned on appeal only for an abuse of discretion." *In re Cumberland Cnty. Dist. Attorney's Off.*, 330 A.3d 471, 480 (Pa.Super. 2025) (quoting *Chadwick v. Caulfield*, 834 A.2d 562, 571 (Pa.Super. 2003)).

> it is the *trial judge*, in the first instance, who uses his or her own *individual discretion or conscience* to determine whether recusal is necessary. *See Commonwealth v. Jones*, 541 Pa. 351, 663 A.2d 142 (1995) (emphasis added). In *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995), our Supreme Court noted that:
>
> > In disposing of a recusal request, a jurist must first make a conscientious determination of his or her ability to assess the case before the court in an impartial manner, free of personal bias or interest in the outcome. This is a personal and unreviewable decision that only the jurist can make. [*Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757, 764 (1989)]. Once satisfied with that self-examination, the jurist must then consider whether or not continued involvement in the case would tend to undermine public confidence in the judiciary. [*Id.*] In reviewing a denial of a disqualification competent. Once the decision is made, it is final[.] [*Reilly by Reilly v. SEPTA*, 507 Pa. 204], 489 A.2d 1291[, 1300 (1985)].
>
> *Id.* at 370 (headnotes, footnote, and internal quotation marks omitted).

*In re Cumberland Cnty. Dist. Attorney's Off.*, 330 A.3d at 479 (emphasis in original). "A party seeking recusal bears the burden of producing evidence to establish bias, prejudice, or unfairness[,] which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. McCauley*,

199 A.3d 947, 950 (Pa.Super. 2018) (quoting **Commonwealth v. Watkins**, 630 Pa. 652, 108 A.3d 692, 734 (2014) (citations omitted)).

Appellant specifically claims that Judge Verwey should have recused himself from the instant litigation as she alleges that, prior to being elected to the bench, Judge Verwey was a partner in the Gawthrop Greenwood law firm, which represented Genevieve Bush and her estate. Appellant suggests that Judge Verwey was unable to impartially decide this matter.

The Pennsylvania Code of Judicial Conduct provides that "a judge shall perform the duties of his judicial office impartially, competently and diligently." 207 Pa.Code 33, Canon 2. The Code states that "a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might be reasonably questioned," including where the judge "was associated with a lawyer who participated substantially as a lawyer in the matter during such association." 207 Pa.Code 33, Canon 2, Rule 2.11.

We recognize that "[t]he Code of Judicial Conduct does not have the force of substantive law, but imposes standards of conduct upon the judiciary to be referred to by a judge in his self-assessment of whether he should volunteer to recuse from a matter pending before him." **Reilly**, 507 Pa. at 219, 489 A.2d at 1298. The canons "set a norm of conduct for all our judges," but "do not impose substantive legal duties on them." **Id.**

In this case, Judge Verwey acknowledged the aforementioned principles and explained his reasons for denying the recusal motion:

As a judge, the undersigned must decide whether his continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. **Lomas v. Kravitz**, 130 A.3d 107, 122 (Pa.Super. 2015) (citation omitted) (finding that full bench recusal was not required). In this regard, the undersigned has considered the issues raised by [Appellant]. I have not been involved in matters concerning [Appellant] or her family, including her mother's estate. I was unfamiliar with proceedings involving [Appellant] or her family members until the within matter was assigned to me in February 2023 following the death of Judge Griffith. For these reasons, I am not recusing myself from these proceedings.

Order, 5/28/24, at 2. Given that there is no evidence of bias, unfairness, or prejudice,[14] we conclude that Judge Verwey did not abuse its discretion in denying the recusal motion.

In sum, we uphold the trial court's September 5, 2024 order awarding Appellees (1) $28,655.57 in counsel fees pursuant to this Court's remand directive in 718 EDA 2022 and (2) $17,035.00 in counsel fees as a sanction for contempt for Appellant's violation of the Rule 233.1 order.

In addition, we find the trial court was justified in barring Appellant from filing further litigation in the Court of Common Pleas to challenge Appellees' title to the Property. We note that during the pendency of this appeal, Appellant submitted numerous motions for this Court's review that merely reiterated the same claims that have been repeatedly found to be meritless

---

[14] We also note that throughout her *pro se* litigation, Appellant has consistently sought the recusal of judges presiding in her cases that have entered rulings unfavorable to Appellant.

and previously litigated.[15]  In particular, on September 14, 2025, immediately prior to her scheduled argument session in this matter, Appellant filed an application seeking immediate review in the nature of mandamus to compel the clerk of the orphans' court to accept her September 5, 2025 "emergency petition" in which Appellant sought to stop Appellees from selling the Property. The clerk of the orphans' court had refused to accept Appellant's "emergency petition" for filing given Judge Verwey's Rule 233.1 order barring Appellant from filing any further litigation to challenge Appellees' title to the Property. Given that Appellant's "emergency petition" clearly violated the filing injunction contained in Judge Verwey's Rule 233.1 order, the clerk of the orphans' court was empowered to refuse to accept the petition for filing.  As such, on September 30, 2025, an order was filed confirming our denial of Appellant's mandamus petition for "emergency" relief in this Court.

Given Appellant's insistence on ignoring the trial court's filing injunction, we conclude that it is also necessary to impose a filing injunction in this Court to avoid the repeated waste of judicial resources and to spare Appellees from having to defend frivolous claims. This Court has emphasized that "[a] pattern of groundless and vexatious litigation will justify an order prohibiting further

---

[15] Appellant also submitted a motion on September 18, 2025 seeking to supplement the original record in this case with unknown documents from the litigation that is pending in the orphans' court.  On October 7, 2025, we entered an order denying the motion for reconsideration.  On October 14, 2025, Appellant filed a motion for reconsideration of our order denying her application to supplement the original record.  We similarly deny Appellant's motion for reconsideration for the reasons set forth in this decision.

filings without permission of the court." ***Coulter v. Lindsay***, 159 A.3d 947, 955–56 (Pa.Super. 2017) (*per curiam*) (quoting ***Chipps v. U.S.D.C. for the M.D. of Pa.***, 882 F.2d 72, 73 (3rd Cir. 1989)). "[T]he extraordinary measure of issuing a filing injunction at the appellate level" is warranted in circumstances where a *pro se* litigant engages in repetitive, vexatious, and frivolous litigation. ***Coulter***, 159 A.3d at 956 (finding the appellant's continued vexatious litigation warranted the award of attorneys' fees and the issuance of a filing injunction at the appellate level). "[A]lthough due process cannot be set aside for judicial economy, we will not extend due process beyond its constitutional limits to indulge the fantasized claims of [an] appellant." ***See also Winpenny v. Winpenny,*** 775 A.2d 815, 818 (Pa.Super. 2001) (imposing Rule 2744 sanctions and an appellate filing injunction to dissuade *pro se* litigant from continuing to file vexatious and groundless litigation). If Appellant continues to submit subsequent frivolous filings to this Court, she will be subject to additional sanctions under Pa.R.A.P. 2744.

The appeal in 1271 EDA 2024 is quashed. The trial court's September 5, 2024 order imposing sanctions is affirmed. Appellant's October 14, 2025 Application for Reconsideration is denied. The Prothonotary of the Superior Court of Pennsylvania is directed not to accept or file any further *pro se* documents presented by Appellant Mary Bush to challenge Appellees' title to the Property.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/10/2025